CHEHARDY, Chief Judge.
Defendant, LaPlace Concrete, Inc. (La-Place) appeals from a judgment rendered in favor of plaintiff Edward Robertson in a suit based on the intentional tort exclusion of the worker’s compensation act, LSA-R.S. 23:1032. Robertson was injured when he fell over a bathtub located on company premises during an argument with the company’s president, Wayne Kimball.
On appeal defendant asserts it was error for the trial judge to find that defendant Wayne Kimball pushed plaintiff causing him to fall over the bathtub and, further, that the trial judge erred in failing to apply the exclusivity provision of the worker’s compensation act barring plaintiff's suit. In addition, defendant claims LaPlace cannot be held liable because the trial judge failed to include the alleged tort-feasor Kimball in its judgment. Defendant lastly asserts the damages awarded by the trial court are excessive.
Plaintiff filed an answer to the appeal in this case. For his part, he asserts Wayne Kimball should have been found liable along with LaPlace in the trial court judgment.
Plaintiff was employed by LaPlace as a driver of a cement mixing truck in November 1985. On the day of the incident in question, November 14, 1985, Robertson reported as usual for work. Since he and his truck were not needed that day, his supervisor, Kimball, ordered plaintiff to clean out the truck’s cement mixer, a procedure that was generally followed on slow days.
At some point between 7:30 a.m. and 9:30 a.m., plaintiff entered the dispatcher’s office where Kimball was working. An argument ensued regarding plaintiff’s failure to clean his mixer. During the argument, Kimball grabbed Robertson’s arm to remove him from the office. Robertson pulled away and Kimball pushed him.
Both men then went outside the dispatcher’s office where they continued “fussing”. As the dispute continued, plaintiff backed up and fell into a four-legged porcelain bathtub. The bathtub was placed in the yard to block vehicular traffic from traversing the area in order to protect cables located there. In the fall plaintiff injured his head, side and leg. He then left the company’s premises and did not return except to pick up his paycheck the following day.
As a result of the accident, plaintiff went to see Dr. Christy Montegut, a specialist in family practice. Dr. Montegut treated plaintiff from November 21, 1985 until February 1986 for tenderness in his right knee, *563 his scalp, muscle spasms and tenderness in his neck and tenderness in his right posteri- or rib cage. She released him to return to work in late February 1986.
Plaintiff filed suit against defendants La-Place and Kimball in February 1986 alleging the intentional tort exception to the Louisiana Worker’s Compensation Act. Trial was held December 12, 1988 and a judgment was rendered in January 1989 in plaintiffs favor. The judgment, however, erroneously awarded worker’s compensation benefits instead of tort damages. Consequently, a motion for new trial was filed, argued and granted resulting in a judgment for general damages in the amount of $3,750.00; medical expenses totalling $858.71, and $3,915.00 in lost wages.
LaPlace first asserts the trial judge could only have found it liable if he determined Kimball intentionally pushed or shoved plaintiff so that he was forced to fall over the bathtub. He contends the evidence as a whole fails to show by a preponderance that Kimball touched plaintiff at all at this stage of the dispute. LaPlace cites Kimball’s denials in his testimony and Robertson’s inconsistent statements in his testimony to support its contention in this regard.
A review of the evidence reveals both parties, for the most part, agree as to the events leading to plaintiff’s fall. They agree that Kimball grabbed and pushed plaintiff while they were in the office. They agree Kimball was upset and “fussing” with plaintiff and that plaintiff was arguing in response to Kimball’s accusations that he was not doing his job. The testimony, however, diverges on the point of whether Kimball pushed plaintiff over the bathtub. There is also some question as to whether the incident occurred at 7:30 a.m. (30 minutes after plaintiff punched in for work) or 9:30 (2 hours following plaintiff’s arrival).
Robertson testified Kimball was in a “bad mood” when he arrived at work that day. He stated he was told to clean the mixer, but washed his truck first. Before beginning the cleaning job he went into the office, where Kimball was engaged in dispatching, to retrieve a “part or “tool”. Plaintiff testified that while he was there Kimball questioned him as to why he was not cleaning the mixer. He stated Kimball was angry despite plaintiff’s response that he was getting ready to start the job and that Kimball shoved him twice before leaving the office. Once outside, plaintiff said the argument continued and Kimball pushed him again causing him to back up. When asked why he was shoving plaintiff, plaintiff testified Kimball asked him what he was going to do about it and shoved him once more. This time, plaintiff said, he fell backward into the bathtub which was behind him during the quarrel in the yard.
Kimball testified plaintiff had not cleaned his mixer as ordered and that when plaintiff came into the office it “upset" him. While there, he stated he grabbed plaintiff’s arm to propel or guide him outside. He also admitted he pushed plaintiff, but said he did so in order to “get distance” so that he could leave the office, and because plaintiff had a hand in his pocket, and, as many of the workers did for work purposes, plaintiff was known to carry a knife. While he stated plaintiff often “showed off” his ability to “quick draw” the knife, he admitted plaintiff had never used it in a hostile or threatening manner, nor had he ever been violent to his knowledge.
Kimball stated that once the two left the office they continued “fussing”. He acknowledged the fact that plaintiff was backing away from him during the altercation, but denied touching plaintiff. He asserted he did not know why plaintiff moved backwards, but testified he, Kimball, might have been moving toward plaintiff. At any rate, Kimball said, plaintiff did not fall, but sort of leaned over the tub. Kimball also stated he did not see any cuts or bruises on plaintiff, who left the premises immediately after the incident.
The trial judge herein found as a matter of fact that Kimball was the aggressor in a battery which caused plaintiff’s injuries. While the findings were initially made part of a judgment awarding plaintiff worker’s compensation benefits, the later corrected *564 judgment awarding tort damages indicates the trial judge had implicitly reaffirmed his factual finding.'
Because the testimony as to the fall was contradictory and there were no witnesses to the event, the trial judge had to make a credibility determination in this case. While we recognize plaintiffs testimony had some inconsistencies, we also note they were minor, and Kimball’s testimony was equally inconsistent regarding, in particular, the time the event occurred. (He asserted it happened at 9:30 a.m., but on cross-examination and in his statement made after the incident, stated it occurred at 7:30 a.m.).
The facts as found by the trial judge must be given great weight by the appellate court and are not to be disturbed absent a finding of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After our review of the testimony, we conclude the trial judge was not clearly wrong in finding Kimball committed a battery on plaintiff causing his injuries.
In the next issue presented by LaPlace, defendant contends the trial court should have barred plaintiffs suit based on the exclusivity provisions of the worker’s compensation act. It points out the event occurred while plaintiff was in the course and scope of his employment and asserts the facts do not meet the test for intentional tort set forth in Bazley v. Tortorich, 397 So.2d 475 (La.1981), and followed by this Court in Kirklin v. Keller, 453 So.2d 667 (La.App. 5th Cir.1984).
LSA-R.S. 23:1032 provides that the rights and remedies provided by the worker’s compensation act to a worker injured on the job are exclusive of any other rights or remedies except for the intentional act of a principal or employer, or its officers, directors, stockholders, partners, and employees. Intentional act was defined in Bazley to mean when the actor consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or when the actor knows the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.
Two months following the decision in Bazley, this writer authored a concurrence in the case of McDonald v. Boh Bros. Const. Co. Inc., 397 So.2d 846 (La.App. 4th Cir.1981). There I was joined by Judge Jim Garrison in concluding the intentional act definition inherently includes the “should have known standard”, based on the view expressed in W. Prosser, The Law of Torts, Ch. 2 section 8 (4th Ed.1971) and that the Bazley definition constituted a “distinction without a difference”. That interpretation was rejected by the Louisiana Supreme Court in Fallo v. Tuboscope Inspection, 444 So.2d 621 (La.1984). However, I continue to adhere to the view expressed in the McDonald concurrence although I, as my fellow judges, have properly and conscientiously followed the rule set forth in Bazley in deciding intentional tort questions in the years following those decisions.
One of those later cases decided by this Circuit is Kirklin v. Keller, supra, cited by defendant. It involved an alleged battery as here. There the plaintiff’s supervisor grabbed his arm to prevent him from walking away while he (the supervisor) was talking to the plaintiff. This Court found the facts revealed no intentional act was committed within the meaning of Bazley because the resulting injuries to plaintiff’s arm and shoulder were not substantially certain to follow from the supervisor’s act.
In 1987 another Louisiana Supreme Court case was rendered pertinent to our issue. That case, Caudle v. Betts, 512 So.2d 389 (La.1987), involved a battery in which plaintiff’s supervisor and co-worker shocked plaintiff with the back of a charged condenser while engaged in “horseplay”.
In the Caudle opinion, the court stated the Bazley decision explained the basic difference between an intentional tort and negligence, but did not profess to put forth a complete exposition of either. The court noted that the “intentional tort law encompasses far more than could be explicated reasonably in a single opinion.” Caudle at 391. It went on to state that, consequently, in cases involving the intentional tort *565 exception to worker’s compensation the element of intent must be evaluated according the general tort law, as it relates particularly to the type of tort at issue. Thus, in a battery case, the tort law related to battery must supply the guidelines to determine whether the plaintiff is entitled to recovery.
The Caudle court enunciated the precepts applicable to battery in the general tort law. It basically stated that liability will be found when the contact occurs as a result of an intentional, offensive or harmful touching, when the touching was intended to violate the other party’s interest without consent. This intent, the court held, need not be hostile, nor does it need to be a desire to do any harm. It is simply the “intent to bring about a result which will invade the interests of another in a way that the law forbids.” Caudle v. Betts, supra, at 391. The court’s definition includes good-natured practical jokes, a belief that the act would not harm plaintiff, or acts committed for plaintiff’s own good. Furthermore, as provided for in the general law of tort, liability for such acts encompasses any injury to the plaintiff including those the defendant did not intend and could not have reasonably foreseen.
We have previously held there was no manifest error in the trial judge’s finding the defendant Kimball was the aggressor in a battery committed upon plaintiff and that battery caused plaintiff to fall and injure himself. We now find these facts meet the tests of Bazley and Caudle. By pushing plaintiff backward over a bathtub it was substantially certain that plaintiff would injure himself. Whether or not Kim-ball foresaw or intended the precise injuries is of no moment under the law of battery. As a result, we find the exclusivity provision of the worker’s compensation act does not apply and plaintiff is entitled to the tort judgment rendered in his favor.
Defendant next contends it cannot be held liable because the trial judge failed to cast defendant Kimball in judgment. It asserts by failing to include Kimball the judgment effectively dismissed him from the suit. Since Kimball then is not liable, LaPlaee asserts neither can it be held liable because LaPlace’s liability is vicarious, and not primary.
In regard to this issue, plaintiff filed an answer to the appeal. He contends the omission of Kimball from the judgment was unintentional, but that, even so, once the trial court decided Kimball committed an intentional tort LaPlaee is vicariously liable under LSA-R.S. 23:1032.
At any rate, in his appeal plaintiff argues Kimball should be cast in judgment since he was found to have caused plaintiff’s injuries. He therefore requests this Court to amend the judgment to reflect Kimball’s liability.
Wayne Kimball was found by the trial judge to be at fault in causing plaintiff’s injury by his intentional act, a finding which we see no reason to disturb. Because of that fact, and the fact that a review of the record reveals no other basis to presume the omission of his name was anything other than an oversight, plaintiff is entitled to the relief he sought in this regard. Consequently, we find the judgment erroneously omitted Kimball’s name from the judgment and amend it to reflect his liability.
The final issue presented for our review is the quantum awarded by the trial judge. Defendant argues the trial judge’s award is excessive under the facts.
In support of this allegation, defendant asserts the plaintiff sustained relatively minor injuries, went to his doctor a “handful” of times and was prescribed pain and muscle relaxants. These facts, defendant contends, do not support an award of $8,023.71.
The medical testimony was presented by Dr. Christy Montegut, a family practice physician. She stated she saw plaintiff four times from November 21, 1985 through February 4, 1986. During that time she advised him not to work, but finally permitted him to return to work at the end of February, 1986. Dr. Montegut testified she treated plaintiff during that time for tenderness in the right knee (although he had a good range of motion), *566 tenderness over his posterior scalp, mild tenderness in the neck and tenderness over the right posterior rib cage. Dr. Montegut prescribed Fiorinal III, a pain reliever, and Flexerial, a muscle relaxant.
At one point during plaintiffs treatment, Dr. Montegut stated, plaintiffs condition justified an increase in the muscle relaxant dosage, and at another, he exhibited spasms in his cervical area. According to Dr. Montegut, the chest injury also continued to flare up, off and on, during the three months of plaintiffs treatment.
Plaintiff testified his neck, side, leg and head were injured in the accident. He stated he wore, on Dr. Montegut’s advice, an “elastic band” type of support around his ribs for the months he was treated. He stated he was unable to work because of pain and followed Dr. Montegut’s recommendations to remain inactive until he recovered.
Plaintiff’s live-in girl friend of nine years supported his claims. She further noted he arrived home the day of the accident with scratches on his arm, and above his shoulder, and stated that he had bruises on his right side. To provide plaintiff with relief from his neck discomfort, she testified she messaged his back every day. She further stated he appeared to be in a lot of pain and could not lift objects as normal.
In regard to his lost wages for the three months he was unable to work, plaintiff testified he earned $5.75 per hour and averaged 20 hours of work per week. Documentation from his employer’s records, however, showed he earned between $6.75 and $7.00 per hour and that for 21 weeks preceding the accident he grossed $3,533. His salary for those 21 weeks averaged $168.24 per week.
The trial judge concluded plaintiff was entitled to damages in the amount of $8,023.71. He apportioned the total to award $3,750.00 for general damages (pain and suffering past and present), medical services and prescribed drugs, $358.71, and lost wages, $3,915.00.
The damages awarded by a trial judge are subject to the appellate court’s review for an abuse of discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). While we find no abuse of discretion insofar as the general damages and medical expenses are concerned, we find the lost wages award does not coincide with the salary documentation.
' At an average of $168.97 per week for three months or 16 weeks, our calculations total $2,703.52. In effect, the trial judge awarded more lost earnings for 16 weeks than plaintiff had received for the 21 weeks preceding his injury. As a result, we conclude the award must be reduced to $2,703.52, an amount more accurately depicting plaintiff’s lost wages for the period of time he was unable to perform any job functions.
Accordingly, the judgment of the trial court is hereby amended to include Wayne Kimball as an additional party cast in judgment and to reduce the total award to $6,812.23, reflecting a reduction of the lost wage award to $2,703.52. The judgment is affirmed in all other respects.
Costs of this appeal are to be paid by defendants.
AFFIRMED, AMENDED AND AS AMENDED AFFIRMED.