555 So.2d 588 (1989)
Wilma GUIDRY
v.
William FREEMAN, Younger Transportation, Inc. of Texas and ABC Insurance Co.
No. CA 88 1678.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
*589 Herbert Barnes, Houma, for plaintiff and appellee, Wilma Guidry.
R. Michael Masterson, Thibodaux, for defendant and appellant, William Freeman.
Randall L. Kleinman, New Orleans, for defendant and appellant, Younger Transp. Inc.
Before EDWARDS, LANIER and FOIL, JJ.
LANIER, Judge.
This action is a suit for damages in tort arising from an incident in which a bystander was hit in the head with a basketball. Suit was filed by Wilma Guidry (Guidry) against Bill Freeman (Freeman), Younger Transportation, Inc. of Texas (Younger), Freeman's employer, and Transport Indemnity Company (Transport), Younger's liability insurer. The trial court found as fact that Freeman was negligent in throwing the basketball in a direction away from the basketball goal and towards Guidry, that this accident was the cause of Guidry's neck injuries, that Younger was Freeman's employer and liable under La. C.C. art. 2320, and that Guidry was fifty percent (50%) at fault in causing the accident. The trial court awarded Guidry $301,637.10 which was reduced by fifty percent (50%) to $150,818.55. Freeman appealed devolutively. Younger and Transport appealed suspensively. Guidry answered *590 the appeal seeking a reduction in her percentage of fault from fifty percent (50%) to zero percent (0%).

FACTS
Younger is a common carrier engaged in the transportation of oilfield equipment and products. It leased a large open metal building located on Coteau Road in Houma, Terrebonne Parish, Louisiana, and used it as one of its trucking terminals. Freeman was paid a commission by Younger to run this terminal. When Freeman first occupied the building for Younger in the fall of 1982, he installed a basketball goal near the front entrance of the building. The purpose of the basketball goal was to provide entertainment for customers and employees while waiting for loads.
On the morning of April 6, 1983, Guidry arrived at the Younger terminal with her fiancee, Gary Broom. Broom was a driver for Younger, and Guidry accompanied him that morning to pick up a load in Houma. After delivering the load, Guidry and Broom returned to the terminal. Guidry went into the terminal office to use the telephone. When she finished, she came outside and began talking with a crowd of people near the front entrance of the building. Freeman and several other men were shooting basketball at this time. Within minutes, Guidry was struck in the back of the head by a basketball. Guidry received no warning prior to being struck.

LIABILITY OF FREEMAN

(Defendants' assignment of error number 1)
Freeman, Younger and Transport contend that the trial court erred in finding that Guidry was not a spectator of the basketball game and that Freeman owed a duty of care to Guidry. They also contend that the trial court erred in finding that Freeman actually threw the ball in a direction away from the goal and towards Guidry.
The Louisiana Supreme Court in Rosell v. Esco, 549 So.2d 840, 844-845 (La.1989) stated the following:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.... In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo....
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.... But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can *591 virtually never be manifestly erroneous or clearly wrong....
(Emphasis added; footnotes omitted; citations omitted)
There was conflicting testimony as to how the accident occurred. Freeman and his wife testified that Freeman was watching the game near the crowd and that Danny Wright shot the basketball that hit Guidry. Danny Wright and Mary Gros testified that Freeman threw the ball in the direction of the crowd, and it hit Guidry. John Bierschwal testified that Freeman took a long shot, and the basketball bounced off of the goal and hit Guidry.
It is evident from the trial court's findings that it made a credibility determination choosing to believe the testimony of Danny Wright and Mary Gros. Since there is no objective evidence to contradict this testimony, we find that the trial court was not manifestly erroneous in finding that Freeman threw the basketball in a direction away from the goal and hit Guidry.
The record also reveals that Guidry was standing in a crowd with her back to the basketball game talking with several persons and had only been at this location for a few minutes when she was hit in the back of the head with the basketball. Thus, the trial court was not manifestly erroneous in finding that Guidry was not a spectator and that Freeman owed a general duty of care to her.
This assignment of error is without merit.

COMPARATIVE NEGLIGENCE OF GUIDRY

(Plaintiff's assignment of error number 1)
Guidry contends that the trial court erred in finding her fifty percent (50%) at fault in causing the accident.
Allocation of fault by the trial court is entirely factual and will be reviewed by the court of appeals under the clearly wrong-manifest error standard. Lee v. Missouri Pacific Railroad Company, 540 So.2d 287 (La.1989). Guidry testified that she had been to Younger's terminal on several occasions and that on several of these visits Younger's truck drivers and/or their customers were engaged in a basketball game. She testified that on the day she was injured she was aware that a basketball game was in progress but stood in close proximity to the game with a group of individuals with her back to the game. The trial court did not err in finding Guidry fifty percent (50%) at fault.
This assignment of error is without merit.

LIABILITY OF YOUNGER

(Younger and Transport's assignment of error number 2)
Younger and Transport contend that the trial court erred in finding Freeman was an employee of Younger and Younger was liable under La.C.C. art. 2320.
Three questions must be answered to determine if Younger is liable for Freeman's fault: (1) Was there an employer-employee (master-servant) contractual agreement between Freeman and Younger?; (2) If there was an employer-employee contractual relationship between Freeman and Younger, was Freeman an independent contractor or an employee for whom Younger was vicariously liable pursuant to La.C.C. art. 2320?; and (3) If Freeman was an employee for whom Younger was vicariously liable (that is, not an independent contractor), was Freeman's conduct which caused injury to Guidry attributable to Younger's business (or personal to Freeman)?
The Louisiana Civil Code provides for the employer-employee contractual relationship in Book I (Of Persons), Title VI (Of Master and Servant). La.C.C. arts. 162, 163 and 164 provide as follows:
Art. 162. There is only one class of servants in this State, to wit: Free servants.
Art. 163. Free servants are in general all free persons who let, hire or engage their services to another in this State, to be employed therein at any work, commerce or occupation whatever for the benefit of him who has contracted with *592 them, for a certain price or retribution, or upon certain conditions.
Art. 164. There are three kinds of free servants in this State, to wit:
1. Those who only hire out their services by the day, week, month or year, in consideration of certain wages; the rules which fix the extent and limits of those contracts are established in the title: Of Letting and Hiring....
Thus, a servant (employee) for purposes of our Civil Code is any person who lets, hires or engages his services to another to be employed at any work, commerce or occupation whatever for the benefit of him (employer) who has contracted with the servant. La.C.C. art. 164(1) provides that employment contracts of persons who hire out their services for wages are controlled by the Civil Code rules of lease. A lease of labor is a synallagmatic contract based on mutual consent by which one party (the servant or employee) gives to the other (master or employer) his labor (services) at a fixed price. La.C.C. arts. 2669, 2670, 2673 and 2675. La.C.C. art. 2745 provides as follows:
Labor may be let out in three ways:
1. Laborers may hire their services to another person.
2. Carriers and watermen hire out their services for the conveyance either of persons or of goods and merchandise.
3. Workmen hire out their labor or industry to make buildings or other works.
Thus, for purposes of the employer-employee contractual relationship, it is irrelevant whether the employee-servant is an independent contractor or a nonindependent contractor. In either situation, the contractual relationship is governed by the same rules.
Independent contractor status of an employee is significant for purposes of tort liability. La.C.C. art. 176 provides as follows:
The master is answerable for the offenses and quasi-offenses committed by his servants, according to the rules which are explained under the title: Of quasi-contracts, and of offenses and quasi-offenses.

La.C.C. art. 2320 provides, in pertinent part, as follows:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
....
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.
Louisiana jurisprudence has not spelled out what is meant by "when the masters or employers ... might have prevented the act which caused the damage." Instead we borrowed the concepts of respondeat superior and independent contractor from the common law. In Comment, The Employer and the Torts of his Independent Contractor in Louisiana, 21 Tul.L.Rev. 619, 619-620 (1947), appears the following:
In 1826 there developed from the doctrine of respondeat superior the rule that the master would not be responsible for the injuries caused by his `servant' if the master `had no control' of the actions of his servant. From this exception to the general rule of the master's vicarious liability for the acts of his servants has since developed the general rule that the employer is not responsible for the acts of his independent contractor....

Nature of the Relationship
Both servant and independent contractor are engaged in the performance of an employment for the benefit of the employer. However, the freedom from control which the independent contractor enjoys in the pursuance of his employment takes him out of the class of a servant or agent and thus relieves the employer from liability for his acts.
[Underscoring added.] [Footnotes deleted.]
In Smith v. Zellerbach, 486 So.2d 798, 801 (La.App. 1st Cir.), writ denied, 489 So.2d 246 (La.1986), the employer-independent *593 contractor relationship is defined as follows:
It is now accepted law that the relationship of principal and independent contractor exists when the following conditions are met:
1. There is a valid contract between the parties;
2. The work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;
3. The contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to the control and discretion of the principal, except as to the result of the services to be rendered;
4. There is a specific price for the overall undertaking; and
5. Specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach.
See also Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972). If an employment relationship meets these criteria, the employer is not vicariously liable for the torts of his employee. However, an independent contractor is still an employee (servant) of an employer (master); the independent contractor's distinction is that he is an employee (servant) for whom the employer (master) has no vicarious tort liability.
Once it is determined that an employee is not an independent contractor, to find an employer vicariously liable under the doctrine of respondeat superior it must be determined whether "the tortious conduct of the employee is so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interests." Lamkin v. Brooks, 498 So.2d 1068, 1070 (La.1986); LeBrane v. Lewis, 292 So.2d 216 (La.1974).
The evidence shows that there was an employer-employee contractual relationship between Freeman and Younger. Freeman and Younger agreed (consented) that Freeman would perform services to manage Younger's terminal for a commission (price) of seven percent (7%) of all receipts generated by the terminal. The essential elements of an employment contract were present. Odeco Oil & Gas Company v. Nunez, 532 So.2d 453 (La. App. 1st Cir.1988), writ denied, 535 So.2d 745 (La.1989).
The evidence also shows that the Smith v. Zellerbach criteria for independent contractor status have not been met and that Freeman was the type of employee for which Younger was vicariously liable. First, the relationship between Freeman and Younger was terminable at the will of either party. Younger provided liability insurance as well as worker's compensation insurance for Freeman. Freeman was paid on a regular basis by checks issued from Younger's office in Houston, Texas. Freeman's activities and operations at the terminal were limited solely to Younger's business, and he was expected to follow and enforce all of Younger's policies.
The accident which injured Guidry was job related. It occurred in the middle of a regular business day and in the business terminal of Younger. The time and place of the accident were connected with Younger's business. The basketball activity was intended to solicit customers for Younger and to entertain Younger's customers and employees while waiting for loads. These activities were never prohibited by Younger. Thus, Freeman's actions were a risk of harm attributable to Younger's business.
The trial court did not err in holding Younger liable under La.C.C. art. 2320 for the negligence of Freeman.
This assignment of error is without merit.

CAUSATION

(Younger and Transport's assignment of error number 3; Freeman's assignment of error number 2)
Freeman, Transport and Younger contend that the trial court erred in finding *594 that Guidry's cervical injuries were caused by the 1983 basketball accident and not by the 1979 or the 1985 automobile accidents in which she was involved.
Dr. Victor Tedesco, a general surgeon, testified that he first saw Guidry in 1979 complaining of neck pain. He prescribed analgesics and muscle relaxers as initial treatment for her complaints. He referred her to Dr. Michael Carey, a neurosurgeon in New Orleans, for a second opinion. Dr. Carey performed several diagnostic tests, including a myelogram. He diagnosed Guidry as having a very minimally bulging disc, but he felt this was not the cause of her complaints. Dr. Tedesco testified that he and Dr. Carey felt Guidry may suffer from thoracic outlet syndrome. Dr. Tedesco felt that no cervical disc surgery was needed and released her on March 14, 1980.
Dr. Tedesco saw Guidry again on April 7, 1983. She complained about being hit in the head with a basketball and having neck and shoulder pain with tingling in the ears. His examination revealed muscle spasms in the cervical area but no neurological symptoms. He prescribed muscle relaxers and recommended rest. He saw her several times after this and she had similar complaints. He recommended she see Dr. Donald Judice, a neurosurgeon. Dr. Tedesco felt that her complaints in 1983 related to the April 6, 1983 basketball accident and not the 1979 automobile accident.
Dr. Judice testified that he first saw Guidry on January 5, 1984. She was complaining of neck pain and headaches and told him about the basketball accident. His physical examination revealed a good range of motion in the neck, but he found a reduced reflex and sensitivity in the right arm. He felt she had a problem with the C-6 nerve. He recommended conservative treatment. After continued complaints by Guidry, he had a C-T scan and a myelogram performed which showed a central disc herniation at the C5-C6 level which was putting pressure on the C-6 nerve. Dr. Judice performed an anterior cervical discectomy and fusion of the C5-C6 level on March 14, 1984. Guidry received some relief from the surgery. Dr. Judice testified that in June of 1984, Guidry returned complaining of neck and right arm pain. She continued with these complaints through June, 1985. Dr. Judice saw Guidry in June of 1985, and she had similar complaints of neck, shoulder and arm pain on her right side. Dr. Judice found muscle spasms on her right side.
Dr. Judice testified that on July 19, 1985, he saw Guidry in Terrebonne General's Emergency Room after she had an automobile accident. She complained about neck, right shoulder and right arm pain. Dr. Judice had another C-T scan and myelogram performed which showed a herniated disc at the C6-C7 level. Dr. Judice recommended a second fusion surgery to try to alleviate the pain. Due to financial difficulty, Guidry did not have this surgery.
Dr. Judice testified that the injuries complained of were caused by the basketball accident and not the 1979 or the 1985 automobile accidents. He assigned a disability of 20%-30% to Guidry.
Dr. William Kinnard, an orthopedic surgeon, testified that he examined Guidry on March 18, 1986. He had a myelogram performed which indicated a bulging disc at the C6-C7 level. He recommended surgery to relieve the pain. He testified that the prior fusion made the lower level more susceptible to injury. He testified that the basketball accident caused the cervical problems rather than the 1979 or 1985 automobile accidents.
The evidence shows that the trial court was not manifestly erroneous in finding that the April 6, 1983 basketball accident caused Guidry's cervical injuries.
This assignment of error is without merit.

QUANTUM

(Younger and Transport's assignment of error number 4; Freeman's assignment of error number 3)
Younger, Transport and Freeman contend that the trial court erred in awarding damages which were excessive.
An appellate court will not disturb the damage award of a trial court unless the *595 trial court has abused its discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Henry v. National Union Fire Insurance Company, 542 So.2d 102 (La.App. 1st Cir.), writ denied, 544 So.2d 405 (La.1989).
After carefully reviewing all of the evidence, we conclude that the trial court's award for damages to Guidry falls within the range of discretion allowed it. See, for example, Henry v. National Union Fire Insurance Company; Rickerson v. Fireman's Fund Insurance Company, 543 So.2d 519 (La.App. 1st Cir.1989); Morris v. State, Department of Transportation and Development, 461 So.2d 606 (La.App. 1st Cir.1984).
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. The defendants are taxed with all costs of these proceedings.
AFFIRMED.
EDWARDS, J., concurs in the result.