WATKINS, Judge.
Plaintiff, Raymond Cousineau, appeals a summary judgment which dismissed his employer, Prime Manpower, Inc., from his suit for tort damages. The issue on appeal is whether or not Prime Manpower, Inc. can be sued in tort for the intentional act of Raymond Cosineau’s co-employee, John Thompson.
FACTS
On June 28, 1986, plaintiff was attacked and severely injured by his co-employee, John Thompson. Both men were employed as laborers of Prime Manpower, Inc. and resided in the company’s bunkhouse. The offense occurred in the bunkhouse on a Saturday night. The last time either of the men had performed work duties for Prime *153 Manpower, Inc. was Friday, June 27, the day before the incident.
According to the plaintiff, the men had worked together on Friday, and there was no trouble between them. On Saturday each went about his own personal business. Mr. Cousineau washed his clothes at a nearby washateria. He then purchased and drank some liquor. Having returned to the bunkhouse, Mr. Cousineau was watching T.V. when Mr. Thompson, totally unprovoked, attacked him and bludgeoned him over the head with a blunt instrument.
According to the record, Prime Manpower, Inc. allowed “its employees to stay in its bunkhouse which was, at the time of the accident in question, located in Morgan City, Louisiana. Both Cousineau and John Thompson, as employees of Prime Manpower Corporation were living in the bunkhouse as part of their employment. No one other than employees were [sic] allowed to live in the bunkhouse.” Employees who lived in the bunkhouse were charged a fee of $4.25 per day for their room and $2.00 per meal. Prime Manpower’s president stated that “[b]oth Mr. Cous-ineau and Mr. Thompson were hired as laborers. Neither had any supervisory capacity within Prime Manpower Corporation or with respect to each other. Neither John Thompson nor Raymond Cousineau were [sic] asked to, or given the responsibility for, disciplining each other whether on the job or in the bunkhouse.”
SUMMARY JUDGMENT
It is well settled that a motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The burden of showing that there is not a genuine issue of material fact in dispute is upon the mover, and any doubt is resolved against the granting of summary judgment and in favor of a trial on the merits to resolve disputed facts. Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981).
When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings; his response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967.
In support of its motion for summary judgment, Prime Manpower, Inc. offered: (1) the affidavit of Raymond Johnson, president and principal shareholder of Prime Manpower, Inc.; (2) the transcript of the preliminary hearing in “State of Louisiana v. John W. Thompson”, No. 121,343, 16th Judicial District Court for the Parish of St. Mary, State of Louisiana; (3) excerpts of the deposition of plaintiff, Raymond Cousi-neau; (4) employment application of Raymond Cousineau; (5) employment application of John Thompson. Plaintiff offered nothing in opposition to the motion for summary judgment.
INTENTIONAL ACT EXCEPTION TO THE EXCLUSIVE REMEDY RULE
Ordinarily an employee’s exclusive remedy for on-the-job injuries caused by a co-employee is worker’s compensation. LSA-R.S. 23:1031 and 1032. However, LSA-R.S; 23:1032 provides an exception to this rule for intentional acts. The jurisprudence has interpreted this intentional act exception to apply to the intentional acts of employees as well as the employer. Jones v. Thomas, 426 So.2d 609 (La.1983). The employer’s liability for the intentional acts of his employees, whether against a third person or a co-employee, extends to only those acts which are within the course and scope of employment. Lamkin v. Brooks, 498 So.2d 1068 (La.1986).
There is no question that the act of Mr. Thompson was an intentional battery. Therefore, the sole issue is whether the tortious act of Mr. Thompson was within the course and scope of his employment with Prime Manpower, Inc.
*154 VICARIOUS LIABILITY/COURSE AND SCOPE OF EMPLOYMENT
The Louisiana Supreme Court has held that in order for an employer to be vicariously liable under the doctrine of responde-at superior, it must be determined whether the “tortious conduct of the [employee is] so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer’s business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer’s interests.” Lamkin, 498 So.2d at 1070-1071, quoting LeBrane v. Lewis, 292 So.2d 216 (La.1974).
In LeBrane, a supervisor, in the process of throwing a recently fired employee off the premises, stabbed the employee. The court found that the dispute was “primarily employment rooted” and “reasonably incidental” to the supervisor’s duties in connection with firing the recalcitrant employee. Thus, the tortious conduct was determined to have been committed within the scope of the supervisor’s employment.
In Lamkin, an on-duty police officer was instructed to proceed outside of his town’s jurisdiction to investigate a complaint. When he arrived on the scene, he was told by Lamkin that he should get back to town because he was out of his jurisdiction. The police officer left the scene and a few minutes later returned to get Mr. Lamkin’s license number. When he returned, he struck Mr. Lamkin in the face, allegedly defending himself from a menacing motion made by Lamkin.
In reversing the trial court’s finding that the Town of LeCompte was not liable for the acts of the police officer, the court found that strict reliance on geographical boundaries to determine liability for a tort committed by a law enforcement officer is incorrect, as geographical' location is but one of many factors to consider. The court went on to conclude that the altercation had its roots in the performance of the officer’s duties.
The Louisiana Supreme Court’s most recent case involving an employer’s vicarious liability for the acts of its employees is Ermert v. Hartford Insurance Company, 559 So.2d 467 (La.1990). The court found the employer liable for the negligence of its president and CEO in an accidental shooting at a hunting camp used by the president-employee for business contacts. The court stated the following in regard to an employer’s vicarious liability of its employees:
The master’s vicarious liability for the acts of its servant rests not so much on policy grounds consistent with the governing principles of tort law as in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities. In determining whether a particular accident may be associated with the employer’s business enterprise, courts often attempt to determine whether, considering the authority given to the employee, the employee’s tortious conduct was reasonably foreseeable.... When considering which risks the employer must bear under vicarious liability, however, the proper test bears more resemblance to that which limits liability for workers’ compensation than to the test for negligence, because the employer should be held to anticipate and allow for risks to the public that ‘arise out of and in the course of’ his employment of labor.
Because vicarious liability is imposed based upon the attribution of business-related risks to the enterprise, specific conduct may be considered within the scope of employment even though it is done in part to serve the purposes of the servant or of a third person. The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master’s business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. So also, the act may be found to be in the service if not only the manner of acting but the act itself is done largely for the servant’s purposes. (Citations omitted.)
Ermert, 559 So.2d at 476-477.
*155 We find the instant case distinguishable from the above cited cases.[1] Unlike the employees in the cited cases, Mr. Thompson was a manual laborer with no authority over any other employee. Thus the scope of risks attributable to him was minimal. See Ermert, 559 So.2d at 477. Furthermore, the tortious act was removed in time from the employment, occurring late Saturday evening after both men had spent the day on personal pursuits. The only evidence linking Mr. Thompson’s vicious act to his employment with Prime Manpower, Inc. was the fact that it took place on the employer’s property. We note that the coürt in Lamkin and Ermert expressly held that the site of tortious conduct is not controlling, but merely a factor to be considered.
Based on the evidence presented on the motion for summary judgment, we find that there is no question of material fact regarding whether the intentional tort committed by John Thompson was within the course and scope of his employment with Prime Manpower, Inc. The unchallenged evidence shows that John Thompson’s conduct was not related to any supervisory relationship between him and Mr. Cousi-neau, and according to Mr. Cousineau’s testimony, there was no employment-rooted discord between the two men. Therefore, we cannot say that Mr. Thompson’s actions were actuated to any appreciable extent by his employer’s business. The fact that the intentional act occurred in the bunkhouse where the two men resided, in and of itself, is insufficient to prove that the conduct was within the course and scope of employment.
For the foregoing reasons, we affirm the trial court judgment granting Prime Manpower, Inc. a summary judgment. All costs are to be paid by appellant, John Cousineau.
AFFIRMED.

. Compare Robertson v. LaPlace Concrete, Inc., 560 So.2d 561 (La.App. 5th Cir.1990) (because employee did not follow a direct order, supervisor pushed employee causing employee to fall over bath tub). Held: employer liable. Guidry v. Freeman, 555 So.2d 588 (La.App. 1st Cir.1989) (employer held liable for injuries to bystander when employee negligently hit her in the head with a basketball during a game on employer’s premises); Caudle v. Betts, 512 So.2d 389 (La. 1987) (employer held liable for acts of chief executive officer when he shocked an employee with an auto condenser as a practical joke during a company Christmas party).
See also Orrill v. Ram Rod Trucking, 557 So.2d 384 (La.App. 4th Cir.1990) (employer held not liable for assault by employee after car accident in which employee was driving employer’s vehicle); Tampke v. Findley Adhesives, Inc., 489 So.2d 299 (La.App. 4th Cir.), writ denied, 491 So.2d 24 (La.1986) (employer not liable for employee's act of killing plant manager during heated discussion concerning hit and run accident in which employee was involved).