577 So.2d 1113 (1991)
Eddie WILLIAMS, et al.
v.
Wendell BUTLER, et al.
consolidated with
Darrell D. WHEELER, et al.
v.
BATON ROUGE RECREATION AND PARKS COMMISSION, et al.
Nos. 90 CA 0077, 90 CA 0078.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
*1114 Stanley R. Aaron, Baton Rouge, for plaintiff-appellant Eddie Williams, etc.
and
Robert D. Hoover, Baton Rouge, for plaintiff-appellant Darrell Wheeler, etc.
Cyrus J. Greco, Helen N. Crouse, Baton Rouge, for defendant-appellee Baton Rouge Recreation and Park Com'n.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
This is a consolidated tort suit brought by Eddie L. Williams and Janice Williams, individually and as administrators of the estate of their minor daughter, Natasha Williams, by Darrell D. Wheeler, individually and as administrator of the estate of his minor daughter, LeToya Wheeler, and by Yvonne Wheeler (plaintiffs), against Wendell Butler, the City of Baton Rouge, and the Baton Rouge Recreation and Parks Commission (BREC). The aim of the suit is twofold. First, plaintiffs seek to recover for injuries sustained by the two minor girls that stem from alleged acts of sexual misconduct on the part of Wendell Butler. These acts occurred while Butler was a supervisor for BREC at the Kerr-Warren Recreational Gym (Center). Second, Darrell Wheeler seeks to recover for his injuries from a gunshot wound inflicted by Butler during a confrontation at the Center.
After suit was commenced, the parties filed cross motions for summary judgment. BREC's motion was granted, and it was dismissed from the suit. Plaintiffs have appealed, challenging the dismissal of BREC from the suit. The trial court erred in summarily dismissing BREC from the suit, according to plaintiffs, because unresolved material issues of fact exist and BREC is potentially liable under three legal theories: (a) respondeat superior; (b) for its independent negligence in hiring Butler; and (c) for its independent negligence in failing to properly supervise the activities at the Center.
A review of the depositions in the record discloses the following. The events first came to the attention of the parents during the course of an outdoor barbecue at the Wheeler home on July 18, 1984. Several young people were present at the barbecue: LeToya Wheeler, Velika McKinney, Natasha Williams, and Leonard Williams. At the time, the girls were six or seven years old and the boy was eight or nine years old. At Leonard's prompting, the girls told Yvonne Wheeler about the incidents which are the subject of this suit. According to the deposition of Yvonne Wheeler, the children told her that Wendell Butler, a/k/a Black Kiki, put his hands between the girls' legs and placed his tongue in their mouths. The girls also told Yvonne Wheeler that they had been too afraid to discuss the incidents prior to that evening because Butler threatened that he would cut the girls' hair off if they told anyone.
The deposition of Darrell Wheeler indicates he learned of the alleged incidents after returning home that evening from work. The next day, around noon, Darrell Wheeler went to the Center to investigate his daughter's claims. After arriving, he was told by a woman, who later turned out to be Butler's mother, to wait outside the office and she would get Butler. While Wheeler waited he could hear a great deal of "shuffling" noises coming from Butler's office, noises which indicated that he was looking for something. After waiting for *1115 some time Wheeler decided to leave. He left the building heading for his truck parked in the Center's lot. Butler came out of the building with a pistol in his hand. Butler asked Wheeler if he was looking for him and then fired three to four shots, one of which struck Wheeler in the left shoulder.
Butler in an affidavit denied molesting the children. Moreover, he claimed Wheeler was armed when he arrived at the Center and that he shot Wheeler in self-defense.
Cliff Henderson, area supervisor for BREC, originally hired Butler for a janitorial position at the Anna T. Jordan Recreation Center, then later promoted him to the supervisory position he held at the Kerr-Warren Center. As per BREC policy Butler filled out an application, but he did not provide an answer in the space provided for prior criminal convictions. Henderson examined the application before Butler was hired as janitor and before he was promoted, but Henderson did not notice the omission on either occasion. Ordinarily, the BREC personnel department also examines prospective applicants carefully. However, in this case, personnel did not review the application with their typical zeal because they were aware that Henderson had some knowledge of his background, as Butler often used the Center. Apparently, Butler had in fact been previously convicted of a felony. Henderson admitted that he would have hired someone else for the position had he known of the conviction.
Henderson's deposition indicates that part of Butler's job description includes supervising the young children who came to play at the Center. Henderson tried to check on him several times a day. However, this often turned out to be simply driving by and not stopping. Butler was classified as part-time, at 32 hours a week, but he regularly worked 40 hours per week.
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. Summary judgments are not favored and any reasonable doubt should be resolved against the mover. Frazier v. Freeman, 481 So.2d 184, 185 (La.App. 1st Cir.1985). A motion for summary judgment can never take the place of a trial on the merits; it is just not a substitute for a trial. Gulf-Wandes Corp. v. Vinson Guard Service, Inc., 393 So.2d 207, 208 (La.App. 1st Cir.), writs denied, 397 So.2d 1359 (La.1981). To obtain a summary judgment it is not sufficient to prove that it is unlikely that plaintiff may recover, nor that the showing then made preponderantly indicates there is no liability. Mecom v. Mobil Oil Corp., 299 So.2d 380, 385 (La.App. 3d Cir.1974).
Plaintiffs contend that BREC was negligent in hiring Butler and the negligence was the legal cause of the harm. In Smith v. Orkin Exterminating Co., 540 So.2d 363 (La.App. 1st Cir.1989), this court held that where a tort-feasor because of the employer/employee relationship has a unique opportunity to commit a crime, such as enabling easy access to the home of the victim, the employer is held to a high standard of duty in the selection and continued retention of its employees. In Smith, Orkin was held liable for the rape of one of its customers when a properly performed polygraph test would have revealed the employee's prior rape convictions. This court, citing Dean Prosser, stated that where there is some special relationship between the parties the defendant may be burdened with a heavy responsibility when there is an "especial temptation and opportunity for criminal misconduct."
Another instructive case is Lou-Con, Inc. v. Gulf Building Services, Inc., 287 So.2d 192 (La.App. 4th Cir.), writs denied, 290 So.2d 899, 901 (La.1974). In Lou-Con, the employee had been convicted of stealing welfare checks. He was hired as the janitor for a commercial building. The employee stole money and later set fire to the building to cover up the theft. Along with finding that it was not foreseeable that a person previously convicted of theft would *1116 commit the crime of arson, the court made several pertinent observations. First, the employer's background check with the local authorities revealed no criminal record. If, however, the employer had checked with the federal authorities the previous theft would have been discovered. The court held that the employer's checking procedure was reasonable in light of the fact that the employee's position was not considered sensitive. Butler, in contrast, was hired for a very sensitive position, and BREC made no effort at all to examine his background. Moreover, in Lou-Con, the application on its face was not questionable, unlike the application given by Butler to BREC with its ominous omission.
We find the holding and rationale of Smith, 540 So.2d at 366-367, applicable here where BREC is entrusted with the well-being of the children of the community. Often unsupervised, Butler was placed in a position of authority over young children. We find that when an employee is to be placed in a position of supervisory and/or disciplinary authority over children, the employer has a duty to properly screen the applicant (and continue to provide screening) to determine if the applicant has been convicted of a crime (or crimes) involving moral turpitude.[1] Here, the record contains evidence that Butler has been arrested for, among other things, theft, robbery, and distribution of controlled dangerous substances. The record, however, does not reveal what Butler was convicted of prior to his employment with BREC.
An employer can be held vicariously liable for the intentional torts committed by its employees. LSA-C.C. art. 2320. In LeBrane v. Lewis, 292 So.2d 216 (La.1974), the supreme court held an employer liable when one of its kitchen supervisors stabbed a subordinate employee in an altercation following the supervisor's firing of the employee and while escorting him off the premises. The court said four factors were important in making its determination: (1) whether the tortious act was primarily employment-rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. In Miller v. Keating, 349 So.2d 265, 268-269 (La.1977), the court added that each case must be looked at on its own merits and that all four factors set forth in LeBrane need not be met before liability may be found. The acts in question clearly occurred at a BREC facility and during the hours that the Center was open to the public. At least with respect to the shooting, a material issue of fact exists as to the remaining two factors.
As stated earlier, Butler categorically denies molesting the children and claims that he fired at Wheeler in self-defense. In contrast, LeToya Wheeler states that Butler tried to touch her between her legs, tried to kiss her, and actually succeeded in putting his hands under her shirt. When combined with Yvonne Wheeler's more shocking versions of the story, which may well be admissible under LSA-C.E. art. 801(D)(1)(d)[2] as an initial complaint of sexually assaultive behavior, at the least there is a material issue of fact regarding whether Natasha was assaulted, i.e., an intentional creation of a reasonable apprehension of imminent harmful or offensive contact and the present ability to effectuate the threat.
The deposition of Natasha Williams is more problematic. At the time of the deposition, she was approximately nine or ten years old. Admittedly, her deposition does not affirmatively establish that Butler harmed her in any way. However, the *1117 deposition does reveal that she was unable to speak freely about the incident:
Q. Did he ever touch you in any way?
A. (Witness nodded her head affirmatively.)
Q. Can you tell me how he touched you?
A. (Witness did not respond.)
....
Q. No. But, he did touch you?
A. (Witness nodded her head affirmatively.)
Q. And you can't tell me how he touched you? You don't remember?
A. (Witness shook her head negatively.) In light of her tender years, and the traumatic circumstances associated with sexual assaults, we cannot conclude that no issue of material fact exists. This is especially true in light of Yvonne Wheeler's testimony which may be admissible under LSA-C.E. art. 801(D)(3)(f) and 801(D)(1)(d).
For the above reasons, the judgment of the trial court is reversed and the case remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Recently the legislature has enacted statutes which are aimed at shielding children from persons convicted of certain criminal offenses involving moral turpitude. See LSA-R.S. 17:15; LSA-R.S. 46:51.2; LSA-R.S. 15:587.1; and LSA-R.S. 15:825.3. The legislature did not begin enacting these statutes until 1986, well after BREC's hiring of Butler. However, these provisions do provide persuasive support for imposing a high standard of care on the selection of BREC's supervisory personnel.
[2] See also LSA-C.E. art. 801(D)(3)(f) which says a statement is not hearsay if the statement is a statement by a minor child offered against a party in an action to recover for injury to that child.