658 So.2d 800 (1995)
Vanessa LATULLAS, individually and on Behalf of her Minor Child
v.
The STATE of Louisiana, et al.
No. 94 CA 2049.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
*801 Rhett R. Ryland and Frank L. Leteff, Baton Rouge, for plaintiff-appellant Nettie Elliot, in her capacity as the natural/legal tutrix of the minors, Crystal Latullas and Tia Monique Latullas, and on behalf of the Estate of Vanessa Latullas.
Pamela J. LeBato, Litigation Div. Risk Management, Baton Rouge, for defendant-appellee State.
George Elliot Brown, pro se.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
In this action, plaintiff, a former inmate at Louisiana Correctional Institute for Women at St. Gabriel, seeks damages from the State, the prison warden, and a former prison security officer as a result of having been raped by the officer during her incarceration. Because plaintiff subsequently became pregnant and gave birth to a child, she contends that the obligation to support the child conceived by the rape was a damage proximately caused by defendants' acts. Plaintiff further asserts on behalf of her minor child a claim for emotional damages which will allegedly be incurred by the child due to the condition of her birth. Upon recommendation by the commissioner, the trial court found the security officer individually liable to plaintiff for damages and attorney fees. From a judgment dismissing the State and prison warden, plaintiff appeals.

FACTS
In August of 1985, plaintiff, Vanessa Latullas (Ms. Latullas), then 26 years of age, was incarcerated at Louisiana Correctional Institute for Women (LCIW) at St. Gabriel, Louisiana. The prison at LCIW is comprised of approximately 30 acres of which 15 acres are enclosed within a fenced compound. The prison grounds outside of the 15-acre compound are referred to as the "outside perimeter".
Ms. Latullas was assigned to the line crew, a work detail comprised of approximately 15 to 20 women prisoners who were charged with maintaining the grounds of the outside perimeter. At all times relevant to this litigation, the line crew was supervised by Lieutenant George Elliott Brown (Lt. Brown), then a correctional security officer at LCIW.
On the afternoon of August 19, 1985, Lt. Brown singled out Ms. Latullas and instructed her to ride with him to a group of semi-abandoned mobile homes located at the rear of the outer perimeter of the prison about 100 yards from the vocational school at LCIW. Ostensibly, Lt. Brown's purpose in taking Ms. Latullas to this remote location was to have her clean the trailer; however, once inside the trailer, Lt. Brown proceeded to rape Ms. Latullas. As a result of this rape, the minor child, Crystal Latullas[1] was conceived.
Ms. Latullas did not report to the prison authorities that she had been raped by Lt. Brown, or even that she was pregnant. The prison authorities at LCIW were later advised of Ms. Latullas' condition upon their receipt of an OB-GYN report dated October 2, 1985. Ms. Latullas initially refused to disclose the identity of the father of her *802 unborn child; however, after speaking with an attorney, Ms. Latullas later said that Lt. Brown was the father of her child.
On March 18, 1986, Ms. Latullas was granted a commutation of sentence, and released from LCIW on that date. She subsequently gave birth to a daughter, Crystal Latullas, on June 1, 1986.
Ms. Latullas individually, and on behalf of her minor child, filed the instant suit on August 8, 1986, naming the State of Louisiana, Lt. George Elliott Brown, and Warden Johnny Jones (Warden Jones) as defendants. Based upon the allegations of her petition, Ms. Latullas sought to recover the sum of $250,000.00 in damages from defendants for the alleged sexual assault, fear, emotional distress, changes to her body, and violation of her constitutional rights. Ms. Latullas also sought $250,000.00 for damages and expenses related to her pregnancy and the future care, feeding, clothing, and schooling of her minor child. Additionally, Ms. Latullas, on behalf of her minor child, sought to recover for the future emotional damages which the "child will sustain as a result of the condition of his or her birth ...".
Through blood tests for paternity performed in December, 1986, Lt. Brown was determined to be the father of Crystal Latullas. Prior to this time, Lt. Brown had denied any involvement with Ms. Latullas. Following receipt of these test results, the Department of Corrections brought disciplinary action against Lt. Brown which resulted in his dismissal. On October 21, 1987, Lt. Brown was informed that he would no longer be represented by the State in this matter. The State subsequently filed a cross-claim against Lt. Brown which was answered by a general denial.
Ms. Latullas died on November 22, 1990, from injuries she received in a hit-and-run accident. On October 23, 1992, Nettie Elliot (Ms. Elliot), the mother of Ms. Latullas and the natural/legal tutrix of Ms. Latullas' minor children, Tia Monique Latullas and Crystal Latullas, was substituted as a party plaintiff in this matter.

ACTION OF THE TRIAL COURT
Through a motion filed on their behalf, Ms. Elliot sought to introduce Ms. Latullas' earlier deposition testimony in lieu of her testimony at trial. Over the objection of Lt. Brown's attorney[2], the commissioner allowed this evidence to be introduced. Following a hearing, Ms. Elliot and the State submitted post-trial briefs.
The commissioner, in his written recommendations to the trial judge found that "Lt. Brown, through force and intimidation, engaged in sexual intercourse with Ms. Latullas" during her incarceration and as a result of this act, Ms. Latullas became pregnant with Lt. Brown's child.[3] For this reason, the commissioner recommended that Lt. Brown be cast for damages under 42 U.S.C. § 1983 and La.Civ.Code art. 2315 in the amount of $150,000.00 and attorney fees in the amount of $35,000.00 and for all costs. The commissioner further recommended that plaintiffs' claims against the State and Warden Jones be dismissed. The trial judge thereafter rendered judgment in favor of the plaintiffs against Brown, but dismissing the claims against the State and Warden Jones. From this judgment, Ms. Elliot has appealed. Lt. Brown has not appealed[4]; therefore, the judgment has become final as to him.

*803 ASSIGNMENTS OF ERROR
On appeal, Ms. Elliot sets forth six assignments of error which we feel can be summarized as follows:
(1) The trial judge failed to hold all defendants liable under 42 U.S.C. § 1983;
(2) The trial judge failed to hold the State and Warden Jones responsible under the theory of vicarious liability for the damages caused by Lt. Brown;
(3) The trial judge failed to hold the State and Warden Jones responsible under a theory of independent negligence for the damages caused by Lt. Brown; and
(4) The trial court failed to award child support as an item of damages.

CLAIMS UNDER 42 U.S.C. § 1983
The first issue raised by Ms. Elliot is that the State and Warden Jones[5] are answerable under 42 U.S.C. § 1983 which provides that any "person" who deprives an individual of his or her constitutional rights under the color of state law shall be liable to that individual. The commissioner, whose written recommendations were accepted by the trial judge, found that:
The State is protected against suits filed against it in Federal courts by the Eleventh Amendment of the United States Constitution. On suits filed against the State under Federal actions in State court, the Supreme Court of the United States has ruled in Will v. Michigan Department of State Police, [491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)] that a State is not a person within the meaning of 42 U.S.C. 1983.
In Will, the Supreme Court stated:
Given that a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims, and that Congress did not provide such a federal forum for civil rights claims against States, we cannot accept petitioner's argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through § 1983.
Will v. Michigan Department of State Police, 491 U.S. at 66, 109 S.Ct. at 2310.
With regard to Ms. Elliot's § 1983 claims against Warden Jones, the commissioner found that the State, not Warden Jones, was the employer of Lt. Brown. Warden Jones, like Lt. Brown, was an employee of the State, who in his capacity as a supervisory employee of the Department of Corrections "did not actually control nor play a significant part in the hiring of George Elliot Brown." The commissioner concluded that the warden was in a peripheral position with respect to the hiring of Brown, and that the only latitude granted to Warden Jones was in making the final selection of Lt. Brown from a list of qualified applicants provided to him by the Department of Corrections.
The commissioner further cited Will for the proposition that a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office, and as such, is no different from a suit against the State itself. Will, 491 U.S. at 70-72, 109 S.Ct. at 2312. In light of the Supreme Court's clear holding in Will, we find the earlier federal district court cases cited by Ms. Elliot to be inapplicable.
For the reasons set forth above, we find this assignment of error to be without merit.

VICARIOUS LIABILITY
Ms. Elliot further asserts that the trial court erred in failing to find the State and Warden Jones answerable for the damages caused by the actions of Lt. Brown under the theory of vicarious liability.
An employer can be held vicariously liable for the intentional torts committed by its employees. La.Civ.Code art. 2320; Williams v. Butler, 577 So.2d 1113, 1116 (La.App. 1st Cir.1991). The employer's liability *804 extends to only those acts which are within the course and scope of employment. Lamkin v. Brooks, 498 So.2d 1068 (La. 1986); Cousineau v. Johnson, 577 So.2d 152 (La.App. 1st Cir.) writ denied, 580 So.2d 379 (La.1991).
Because Lt. Brown was, at all times pertinent hereto, an employee of the State of Louisiana, the State, and not Warden Jones, would be answerable under a theory of vicarious liability.
In LeBrane v. Lewis, 292 So.2d 216 (La. 1974), the Louisiana Supreme Court set forth four factors which it utilized in determining whether an employer should be held liable for the tortious acts of its employee: (1) whether the tortious act was primarily employment-rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. Therefore, the test for an employer's vicarious liability is whether "the tortious conduct of the [employee is] so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interests." Lamkin, 498 So.2d at 1070 (quoting LeBrane v. Lewis, 292 So.2d 216 (La.1974)); see also, Cousineau, 577 So.2d at 154.
Later, in Miller v. Keating, 349 So.2d 265 (La.1977), the court stated that it did not mean to suggest that all four of the factors set forth in LeBrane must be met before vicarious liability may be found. The court went on to add that each case must be looked at on its own merits. Miller, 349 So.2d at 268-269; Williams, 577 So.2d at 1116. Upon application of these precepts to the facts before us, the trial court found, and the State and Warden Jones apparently concede, that the act in question occurred on the outside perimeter of the prison grounds at LCIW during the hours that Lt. Brown was engaged in his duties as a correctional security officer at that facility.
It is well settled, however, that "an employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours." Barto v. Franchise Enterprises, Inc., 588 So.2d 1353, 1356 (La.App. 2nd Cir. 1991), writ denied, 591 So.2d 708 (La.1992); McClain v. Holmes, 460 So.2d 681, 684 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1321 (La.1985); Scott v. Commercial Union Insurance Company, 415 So.2d 327, 329 (La. App. 2nd Cir.1982); Terito v. McAndrew, 246 So.2d 235, 239-240 (La.App. 1st Cir.1971). Vicarious liability will attach only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objectives. Scott, 415 So.2d at 329; Terito, 246 So.2d at 239-240.
In brief, the State and Warden Jones assert that "the [trial] court was correct in finding that the tortious act was neither primarily employment rooted nor was it reasonably incidental to the performance of the employer's duties." The commissioner, in his written recommendations, went on to conclude that "Lt. Brown formed a plan in his own mind to pursue the willful assault against Vanessa Latullas. In the process of forming this plan, he distanced himself from his employment relationship and the course and scope of his employment with the State of Louisiana, and the State of Louisiana is not responsible for his conduct in carrying out his plan." We cannot agree.
From our review of the record in this matter, we note that like the police officer in Lamkin, Lt. Brown's contact with Ms. Latullas occurred in the course of his duties as a correctional security officer at LCIW. At the time the rape occurred, Lt. Brown was on duty and charged with the direction and supervision of the female prisoners assigned to the line crew.
Because of the authority bestowed upon him by his employer, Lt. Brown, like the police officer in Applewhite v. City of Baton Rouge, 380 So.2d 119 (La.App. 1st Cir.1979), was able to separate Ms. Latullas from her fellow inmates, and commit the act of rape. Even though the rape itself was totally unauthorized by Lt. Brown's employer, and motivated by Lt. Brown's personal desires, the rape nevertheless occurred while he was at *805 least partly actuated by his purpose of acting for his employer in the control and supervision of inmates, and it was through these duties that this opportunity arose.
As the supreme court stated in Ermert v. Hartford Insurance Company, 559 So.2d 467, 477 (La.1990):
The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. So also, the act may be found to be in the service if not only the manner of acting but the act itself is done largely for the servant's purposes.
(Citations omitted.)
Accordingly, we find that the State is vicariously liable for the actions of Lt. Brown in this case.

LIABILITY FOR NEGLIGENCE
Having determined that the State is vicariously liable for the tortious conduct of its employee, Lt. Brown, we see no need in determining the independent negligence issue and pretermit same.

DAMAGES
As we have previously noted, Ms. Latullas, in her petition, asserted claims against Lt. Brown, Warden Jones, and the State of Louisiana under 42 U.S.C. 1983 and Louisiana Civil Code articles 2315 et seq. together with a demand for penalties and attorney fees. Ms. Latullas further claimed that, "[a]s a result of the attack and the resulting pregnancy, plaintiff has suffered infliction of emotional distress, changes to her body, fear and other damages associated with the trauma of the sexual assault and resulting pregnancy in the amount of TWO HUNDRED FIFTY THOUSAND ... DOLLARS."

Effect of Solidary Liability
The trial judge, based upon the recommendations of the commissioner, found Lt. Brown solely responsible for the injury to Vanessa Latullas and awarded damages under 42 U.S.C. 1983 and La.Civ.Code art. 2315 in the amount of $150,000.00 and attorney fees in the amount of $35,000.00. As we have stated, Lt. Brown did not appeal, and this judgment has now become final.
Our earlier determination that the State is vicariously liable for the tortious conduct of its former employee, Lt. Brown, renders the State liable in solido with Lt. Brown, for the injuries he inflicted upon Ms. Latullas. This solidary relationship exists because both the State and its employee are obligated for the same thing, repair of the damage to Ms. Latullas. While Lt. Brown is primarily responsible for the damages occasioned by his tortious conduct, the State's liability for Lt. Brown's actions is derivative or secondary because of the relationship then-existing between them.
Having said this, we must now consider the quantum of damages to be awarded. Because Lt. Brown failed to appeal the trial court's judgment, the amount of general damages awarded under that judgment is now final and executory against him. The State, as a solidary obligor, is also liable for the amount of this judgment which it allowed to become final against Lt. Brown.[6]
In light of the foregoing, we conclude that the State is liable in solido with Lt. Brown for the $150,000.00 in general damages awarded to Nettie Elliot, the mother of decedent, Vanessa Latullas, in her capacity as the natural/legal tutrix of Tia Monique Latullas and Crystal Latullas, the minor children and sole heirs of Vanessa Latullas, for the injuries which she sustained as a consequence of the rape, resulting pregnancy and alleged emotional trauma. The State's liability as a solidary obligor does not extend to the trial court's award of attorney fees in the amount of $35,000.00 as awards of this nature are not recoverable against a public body under 42 U.S.C. § 1983.

*806 Future Child Support For Crystal Latullas

The trial court did not specifically address the issue of whether the State is obliged to provide future child support to the child conceived by Ms. Latullas as a result of her rape. However, it cast Brown for damages `in favor of plaintiff Nettie Elliot, individually and as the legal Tutrix of Christal (sic) Latullas and Tia Monique Latullas.' Ms. Latullas further asserted in her petition that she "will be required to expend significant sums for her care during and after pregnancy and for the care of her child to be born and for the future feeding, clothing and schooling of her child. Her damages and expenses related to her pregnancy and care of her child in the future are at a minimum TWO HUNDRED FIFTY THOUSAND... DOLLARS."
We note that in Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1155 (La.1988), a malpractice case involving the subsequent birth of a child following a tubal litigation procedure, the Louisiana Supreme Court addressed the issue of an unplanned and unwanted birth of a child. In Pitre, the court examined similar cases from other jurisdictions and stated that while a great majority of courts allow parents to recover under wrongful conception or wrongful pregnancy claims, there is disagreement as to the amounts recoverable. The court further noted that where the cause of action is recognized, most courts allow the recovery of expenses directly associated with the pregnancy and delivery. While some courts award child-rearing expenses, the court stated that this amount is usually reduced by the "benefit" brought about by the birth of the child.
The court in Pitre went on to hold that because of the foreseeable consequences of the doctor's alleged negligent acts and omissions, "the parents upon proper proof may recover for the expenses incurred during pregnancy and delivery, the mother's pain and suffering, the father's loss of consortium, service and society, and their emotional and mental distress associated with the birth of an unplanned and unwanted child and the unexpected restriction upon their freedom to plan their family." Pitre, 530 So.2d at 1161-1162.
After a thorough review of the record in this matter, we believe that the trial court's award of $150,000.00 is more than sufficient to recompense Ms. Latullas' estate for the injuries she sustained as a result of the rape, as well as cover the expenses which have been incurred, and which will be incurred in the future, as a consequence of the birth of Crystal Latullas.

Humiliation To Be Suffered By Crystal Latullas
Ms. Latullas further asserted on behalf of her minor child, Crystal Latullas, a claim for damages for the humiliation the child will suffer due to the stigma surrounding her birth. At trial, there was no evidence presented on Crystal's behalf to substantiate Ms. Latullas' claim that the child suffers from or will be burdened with a stigma resulting from her birth or conception. In his report, the commissioner concluded that such a claim is tantamount to a claim for "wrongful life" as discussed in Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La. 1988),[7] and denied recovery. We find no error in this ruling.

CONCLUSION
For the reasons set forth above, the judgment of the district court is reversed and set aside as to its finding that the State of Louisiana is not vicariously liable for the tortious conduct of its employee, Lt. George Elliott Brown. Accordingly, the State of Louisiana is liable in solido with Lt. George Elliott Brown for the $150,000.00 in general damages which the trial court awarded to Nettie Elliot, the mother of decedent, Vanessa Latullas, in her capacity as the natural/legal tutrix of Tia Monique Latullas and Crystal Latullas, the minor children and sole heirs of Vanessa Latullas, together with legal interest thereon from the date of judicial demand until paid. In all other respects, the judgment appealed from is affirmed. Costs *807 of this appeal are assessed against the State of Louisiana in the amount of $373.93.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] In his written recommendations to the trial judge, the commissioner incorrectly referred to the child fathered by Lt. Brown as Tia Monique Latullas; Tia Latullas is the older half-sister of the child in question, Crystal Latullas.
[2] At a pre-trial hearing, and again on the morning of trial, counsel for Lt. Brown objected to the use of Ms. Latullas' deposition testimony on the grounds that Lt. Brown did not receive notice of this deposition and was unrepresented by counsel. While Lt. Brown, on October 21, 1987, acknowledged receipt of a letter from the State's attorney which advised that the State would no longer be representing him in this matter, the letter failed to mention the upcoming deposition of Ms. Latullas which was taken by the State on October 30, 1987.
[3] As stated in Footnote 1, the commissioner throughout his recommendation, erroneously refers to the child fathered by Lt. Brown as Tia Monique Latullas; Tia Monique Latullas is the older half-sister of the child in question, Crystal Latullas.
[4] At the time of trial, Lt. Brown was allegedly living in Seattle, Washington. He was not present at the trial, and had little or no contact with his attorney prior to trial. For this reason, counsel for Lt. Brown sought permission from the commissioner to withdraw on the morning of trial. This request was denied; however, after the rendition of the judgment in this matter, counsel for Lt. Brown was permitted to withdraw from this matter.
[5] The commissioner's recommendation which was accepted by the trial judge, found Lt. Brown liable for damages under La.Civ.Code art. 2315 and 42 U.S.C. § 1983.
[6] To protect itself from the risk of exposure, the State's remedy would have been to appeal the judgment rendered against Lt. Brown as to quantum.
[7] The court in Pitre noted that a child's action for general damages as a result of being born in an afflicted condition has uniformly been rejected by all courts before which the matter has been raised. Pitre v. Opelousas General Hospital, 530 So.2d at 1154-1155.