498 So.2d 1068 (1986)
Donnal L. LAMKIN
v.
Robert BROOKS, et al.
No. 86-C-0903.
Supreme Court of Louisiana.
November 24, 1986.
Rehearing Denied January 8, 1987.
*1069 David Sheffield, Gary Sheffield, for applicant.
Alonzo Wilson, Trimble, Percy, Smith, et al., Dee D. Drell, Gold, Simon, Weems, et al., for respondents.
MARCUS, Justice.[*]
Donnal L. Lamkin filed this suit against Robert Brooks, the Town of Lecompte and its insurer, American Home Assurance Company, seeking damages for injuries sustained when Brooks, acting in the course and scope of his employment as a Lecompte police officer, struck him on the head without warning or reason. He further alleged that the incident took place outside the jurisdiction of the Town of Lecompte. Defendants answered, generally denying the allegations of plaintiff's petition. After trial, the trial judge rendered judgment in favor of plaintiff and against Brooks for $5,000 together with interest and costs.[1] He further dismissed plaintiff's suit against the town and its insurer finding that, although Brooks was employed as a police officer at the time of the tort, he "knew that he was outside the territorial jurisdiction of ... Lecompte and [that] the authority that he had was no greater than that of the average citizen," citing Charles v. Town of Jeanerette, 234 So.2d 794 (La.App. 3d Cir.1970), writ refused, 256 La. 853, 239 So.2d 358 (1970), as authority. Plaintiff appealed. Finding that the Charles case controlled, the court of appeal affirmed the trial judge's finding that the town and its insurer were not liable but increased the award of damages from $5,000 to $20,254.60.[2] Upon plaintiff's application, we granted certiorari to review the correctness of that decision.[3]
On the night of November 19, 1982, Officer Robert Brooks was on patrol as a police officer for the Town of Lecompte when he saw a truck and a car parked on the shoulder of State Highway 112, just inside the Lecompte town limits. Donnal Lamkin, his son Lonnie, and Lonnie's date were sitting in the vehicles. Lonnie Lamkin, sitting in the driver's seat of the car, was vomiting out of the window. Donnal Lamkin informed Brooks that they did not need assistance and Brooks continued on patrol.
Shortly thereafter, Brooks came upon the Lamkins arguing in the parking lot of the Bayou Lounge, a Lecompte bar. Lonnie's date was sitting in the car. Donnal was obviously intoxicated and Lonnie was trying to persuade his father to leave his truck and ride home with him. Brooks informed the Lamkins that if Donnal insisted on driving while intoxicated, he would have to arrest him. After considerable discussion, Brooks agreed to "look the other way" so that Donnal could drive a short distance to the place where he was to stay that night. Lonnie reportedly assured Brooks that "he would see to it that [Donnal] got to the house." Brooks returned to his patrol.
A few hours later, between three and four o'clock in the morning, Lecompte's police radio operator dispatched units driven by Brooks and Officer Riley Williamson to investigate a complaint of "two drunks" blocking Highway 112 west of Lecompte. *1070 Officer Brooks had about one year of experience as a police officer, while Williamson had only been on the job for about two weeks. Brooks and Williamson found the Lamkins parked at the intersection of Humpy Strange Road and Highway 112. This location was outside the jurisdiction of the town. One or both of the Lamkin vehicles at least partially obstructed the intersection. Although Donnal informed the officers that they should get back to town because they were outside their jurisdiction, Lonnie Lamkin and his date voluntarily moved the car and the truck off the road as they were requested to do. Donnal told Brooks that he would "whip his ass" if he did not return to town. Brooks and Williamson then left in their respective vehicles to return to Lecompte. Williamson drove down Highway 112 while Brooks proceeded down Humpy Strange Road. Both routes led back to Lecompte. However, after driving a short distance, Brooks turned his car around and drove back to the intersection where the Lamkins were still parked. Brooks testified in deposition that he went back because he needed to record Donnal's license number on an "incident report." While he was sitting in his car writing down the license number, Donnal approached the car and repeated his threats. When Donnal made what Brooks perceived as a menacing motion, Brooks got out of the car "to defend himself" and hit Donnal once in the face. On the other hand, the Lamkins and Lonnie's date testified that when Brooks returned to the intersection, he got out of the police car and hit Donnal without saying a word. The blow broke several bones in Donnal's face, requiring surgery and hospitalization.[4]
In denying relief against the town, the lower courts relied on Charles v. Town of Jeanerette, supra, which involved a Jeanerette police officer who pursued a speeding motorist to his home located outside the town limits and negligently shot and killed him while attempting to make an arrest. The court reasoned that because a municipality has no authority to exercise its powers outside of corporate limits, any action taken by an officer outside its jurisdiction would be ultra vires and thus outside the course and scope of his employment. Hence, the Town of Jeanerette could not be vicariously liable for the negligent act of its employee committed outside the town limits. We find that strict reliance on geographical boundaries to determine liability for a tort committed by a law enforcement officer is incorrect. The fact that Brooks wrongfully injured Lamkin outside the town limits does not automatically absolve the Town of Lecompte from liability for its employee's tort. To that extent, the Charles case is overruled. Questions of whether an officer who commits a wrongful act outside his jurisdiction left the jurisdiction knowingly or inadvertently, was dispatched there by his superiors or left it in pursuit of a vehicle are only some of the factors to be considered in determining whether the officer acted in the course and scope of his employment.
We must therefore consider whether Brooks was acting within the course and scope of his employment at the time of his wrongful act in order to determine if the town can be held vicariously liable under the theory of respondeat superior. An employer's vicarious liability in Louisiana derives from La.Civ.Code art. 2320, which provides in pertinent part:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
In LeBrane v. Lewis, 292 So.2d 216 (La. 1974), we held that the test for an employer's liability is whether "the tortious conduct of the [employee is] so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interests." *1071 In LeBrane, Lewis, LeBrane's supervisor, had fired him for cause. While he was waiting to collect his final pay, LeBrane and his supervisor engaged in a violent argument and "more or less invit[ed] each other outside." On the way out, the two began fighting. It is unclear who was the initial aggressor, but Lewis stabbed LeBrane as he tried to run away from the business premises. The trial court found that the supervisor was liable in tort due to his use of excessive force. Both lower courts denied LeBrane recovery against the employer on the ground that by the time that the actual stabbing occurred the altercation had become "a purely personal matter between LeBrane and Lewis." We reversed, reasoning that the dispute that erupted into violence was primarily employment rooted. We found that the tort was sufficiently within the scope of the supervisor's employment for his employer to be held liable to the victim.
In the present case, the altercation between Brooks and Donnal clearly had its roots in Brooks' performance of his duties as a Lecompte police officer. The record indicates that before the night in question no bad blood existed between the two men. All of Brooks' contacts with Donnal that evening occurred in the course of his police duties. The radio operator instructed him to proceed outside the town's jurisdiction to investigate a complaint. Brooks' incident report, which was introduced into evidence, includes Donnal's truck's license number, supporting Brooks' contention that he returned to the scene to record this information. Brooks wore a police uniform, carried a gun and drove a Lecompte police car. Under these circumstances, we find that Brooks' tortious conduct was so closely connected in time, place and causation to his employment duties as to be regarded as a risk of harm fairly attributable to his employer's business. Therefore, Brooks was within the course and scope of his employment at the time he hit Donnal Lamkin and the Town of Lecompte is vicariously liable to plaintiff for his damages.
Plaintiff also contends that the town is guilty of independent negligence. Having found that the town is vicariously liable for Brooks' wrongful act, we need not reach the issue of independent negligence.[5]
We next consider whether the town's insurer, American Home Assurance Company, is required to indemnify the town under the terms of its policy. At the time of the tort, the Lecompte Police Department was insured under a "Law Enforcement Agency Professional Liability" policy issued by the American Home Assurance Company. The policy names as "insureds"
the Named Insured [the Town of Lecompte Police Department] and all paid full or part time employees of the Named Insured and, the political subdivision [the Town of Lecompte] in which the Named Insured is located, should such political subdivision be named in any action or suit against the Named Insured or any employee of the Named Insured for any act, error or omission for which this policy affords protection.
As an employee of the "Named Insured," Brooks is an "insured" under the policy. The policy provides that it "applies to acts, errors or omissions occurring within the legal jurisdiction of the Named Insured...." (Emphasis added.) The policy also specifically excludes coverage for "damages arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any Insured, or claims or injury arising out of the willful, intentional or malicious conduct of any Insured."
*1072 American Home contends that it is not liable under the policy for the reason that the act occurred outside the legal jurisdiction of the named insured. It also argues that the policy specifically excludes coverage for any claim "arising out of the willful, intentional or malicious conduct of any Insured."
The Town of Lecompte urges that the "territorial" restriction limiting policy coverage to "acts, errors or omissions occurring within the legal jurisdiction of the Named Insured" should be considered void as against public policy. It also argues that the phrase "legal jurisdiction" is vague and ambiguous and that the coverage afforded by the policy is unclear and should be construed in favor of the town. We need not reach this issue because we find that in any event the town is afforded no coverage due to the exclusion of claims "arising out of the willful, intentional or malicious conduct of any Insured." Officer Brooks is an insured under the policy. The record fully supports that his unprovoked attack on Lamkin was a willful and intentional act on his part. Therefore, his conduct clearly falls within this exclusion. Because the town's vicarious liability is based on the intentional act of its employee (Brooks), we reject the town's contention that the exclusion does not apply to it. Hence, the policy affords no coverage to the Town of Lecompte.
Because the town was successful in the courts below, the issue of the town's liability has never been reviewed. The town contends that the court of appeal erred in increasing the damages awarded by the trial court. The trial judge awarded $5,000 in damages. The court of appeal increased this award to $20,254.60.
Brooks' blow broke Lamkins' jaw and shattered several bones in his face near his eye. Lamkin underwent surgery under general anesthesia to reset the broken facial bones. He was hospitalized for three days and could eat no solid foods for six weeks. Lamkin's face is scarred as a result of the injury. He also testified that he suffered from blurred vision for a month after the injury and that parts of his face still remain numb. The court of appeal, finding that since Lamkin's special damages alone were $5,254.60, the award of damages ($5,000.00) by the trial judge was "inadequate." It found that $15,000.00 was the lowest award for general damages reasonably within the discretion afforded the trial court. Accordingly, it increased the award for general damages to $15,000.00 and awarded special damages of $5,254.60. We find that the court of appeal did not err in increasing the award to $20,254.60.
In sum, we find that Brooks was within the course and scope of his employment at the time he hit Donnal Lamkin and that the Town of Lecompte is vicariously liable to plaintiff for his damages, that the policy issued by American Home Assurance Company affords no coverage to the Town of Lecompte and that the court of appeal did not err in increasing the award of damages to $20,254.60.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed in part and affirmed in part. The judgment is reversed insofar as it failed to hold the Town of Lecompte liable in solido with Robert Brooks for the amount of damages awarded to Donnal L. Lamkin. Otherwise, the judgment is affirmed.
NOTES
[*] Pike Hall, Jr., associate justice ad hoc, sitting for Associate Justice Harry T. Lemmon.
[1] Brooks took no appeal from this judgment.
[2] 487 So.2d 1251 (La.App. 3d Cir.1986).
[3] 489 So.2d 909 (La.1986).
[4] Although final as to Brooks and apparently not at contest here, the decision of the trial judge finding Brooks at fault was clearly correct.
[5] At trial, plaintiff attempted to introduce evidence of the town's independent negligence. Defendants objected on the ground that such evidence was barred by La. Code Civ. P. art. 1154 because it raised an issue not included in plaintiff's petition. The trial judge sustained defendants' objection but allowed plaintiff to proffer evidence as provided by La. Code Civ. P. art. 1636. The only evidence produced by plaintiff revealed that Brooks had had an attendance problem at the police academy and had failed to complete the course and that the town occasionally dispatched police officers on calls outside its jurisdiction. In any event, we conclude that plaintiff did not meet his burden of proving that the town was independently negligent.