644 So.2d 664 (1994)
Robert A. GARRETT, Dora Garrett and Robert A. Garrett, Jr.
v.
Lon FLEETWOOD, et al.
No. 93-CA-2382.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1994.
Opinion Denying Rehearing November 16, 1994.
*666 Dean A. Sutherland, New Orleans, for appellant, the State.
Scott G. Jones, Hulse, Nelson & Wanek, New Orleans, for appellant, Lon Fleetwood.
Jennifer Willis, Cater & Willis, New Orleans, for appellant-appellee, Robert A. Garrett, Jr.
Mark S. McTernan, McTernan & Parr, New Orleans, for appellee, Robert A. Garrett, Sr.
CIACCIO, LOBRANO and ARMSTRONG, JJ.
CIACCIO, Judge.
This lawsuit arises from an altercation between plaintiffs and Lon Fleetwood, a Mississippi River Bridge Authority (MRBA) officer. Following a jury trial, judgment was rendered in favor of plaintiff, Robert Garrett, Sr., (Garrett) and against Fleetwood. Judgment was also rendered by the trial court in favor of plaintiffs Garrett, Dora Garrett and Robert Garrett, Jr. against the State of Louisiana (State) on behalf of the MRBA. This appeal followed. For the reasons stated herein, we affirm in part and reverse in part the judgment of the trial court.

Facts
On the evening of October 24, 1987, at approximately 7:30 p.m., Robert Garrett and his wife, Dora Garrett, were returning from a grocery store to their home in Algiers. Garrett was driving his truck in the left lane of traffic on General Meyer Avenue near its intersection with Farragut Street when he noticed a police vehicle with flashing emergency lights proceeding behind him. Garrett testified at trial that he attempted to change lanes to avert the vehicle, but was unable to do so because of the presence of other vehicles in the right lane. As Garrett was attempting to turn left onto Numa Street across oncoming traffic on General Meyer, his vehicle was struck repeatedly by the police vehicle. Garrett pulled his vehicle over onto Numa Street and the police vehicle stopped parallel to Garrett's truck. The Garretts subsequently learned that the vehicle was a MRBA vehicle which was being driven by defendant, Lon Fleetwood, an MRBA officer at the time.
Garrett alleges that upon stopping his vehicle, Fleetwood exited his car and began shouting obscenities at Garrett and his wife. Fleetwood demanded Garrett's license, which Garrett was unable to produce immediately. Fleetwood ordered Garrett out of his truck, and then called for police assistance. Several additional MRBA vehicles and New Orleans Police Department (NOPD) vehicles arrived on the scene. Garrett alleges that he was placed up against the rear of his truck where he was rammed by Fleetwood and repeatedly beaten by several of the officers on the scene.
During this altercation, Garrett's son, Robert A. Garrett, Jr., was at the family home approximately two blocks away and was informed of the incident involving his father. Robert, Jr., who was sixteen at the time, ran to the scene where he was involved in a scuffle with Fleetwood. Mrs. Garrett attempted to aid her son, but was pushed back by one of the officers.
Another MRBA officer, Stanley Mollier, attempted to break up the fight between Fleetwood and Robert, Jr. Upon observing the fight, Garrett pulled Mollier by the neck, allegedly in an effort to protect his son. Garrett was then brought back behind his truck where he alleges he was beaten again by several officers and was subsequently placed in handcuffs.
Garrett alleges he was then placed in the rear seat of Fleetwood's vehicle. Robert, Jr. was also arrested by Fleetwood and placed with his father in the vehicle. The two were then transported to the MRBA office where they were questioned by other MRBA officers. Garrett alleges that while at the MRBA office, he and his son were forced to remain in the backseat of the police vehicle for approximately four hours. At some *667 point, Garrett claims that Fleetwood turned on the heater in the vehicle and left it running for some period of time.
Later that evening, Garrett was transported to Central Lockup where he was booked and remained until the following afternoon. Robert, Jr. was brought to a juvenile facility where he remained for several hours. No criminal charges were brought against the Garretts and the charges for Garrett's traffic violations were subsequently dismissed.
As a result of this incident, Robert A. Garrett, Sr., Dora Garrett and Robert A. Garrett, Jr. filed suit in Civil District Court against Fleetwood, the MRBA, the Louisiana Department of Transportation and Development (DOTD), unknown MRBA officers, unknown NOPD officers and the City of New Orleans (City). In their petition, plaintiffs asserted claims for violation of their constitutional rights and for intentional infliction of emotional distress, defamation, slander, malicious prosecution, assault, battery and outrage. Plaintiffs also asserted a claim against the MRBA for negligence in hiring and retaining Fleetwood as an MRBA employee.
The allegations against the State of Louisiana on behalf of the MRBA and the DOTD as well as the claims against the City were tried before the district court judge and the allegations against Fleetwood were tried before a jury.
After several days of trial, the jury returned a verdict in favor of plaintiff, Robert A. Garrett, Sr. and against Lon Fleetwood, awarding Garrett $210,000.00 in special damages and $140,000.00 in general damages. The jury assessed Fleetwood's liability at 70 percent and plaintiff's comparative fault at 30 percent. The jury's verdict found no liability on the part of Lon Fleetwood for the claims of Dora Garrett and Robert Garrett, Jr.
The trial judge rendered judgment adopting the jury's verdict, and further rendered judgment against the State of Louisiana, finding that the MRBA's negligent retention of Fleetwood as an employee contributed to plaintiffs' damages in the amount of 10 percent. The court assessed the damages of Dora Garrett at $50,000.00 and Robert Garrett, Jr.'s damages at $30,000.00, and rendered judgment against the State of Louisiana in the sum of 10 percent of these damages, or $5,000.00 to Dora Garrett and $3,000.00 to Robert, Jr.
In addition, the court adopted the jury's assessment of Robert Garrett, Sr.'s damages in the total amount of $350,000.00, for which the court found the State to be 80 percent liable, based on the jury's finding of 70 percent liability and the court's own determination of 10 percent liability for negligence of the MRBA. Accordingly, the court rendered judgment in favor of Robert Garrett, Sr. in the amount of $280,000.00. The trial judge did not render judgment against the City of New Orleans.
From this judgment, Fleetwood and the State of Louisiana have suspensively appealed. Dora Garrett's claim against the State has been settled and is not the subject of this appeal. Robert Garrett, Jr. has also appealed from the judgment of the trial court.
The issues raised on appeal by the State and Fleetwood are as follows:
1) The trial court erred in finding the State vicariously liable for the acts of Lon Fleetwood;
2) The trial court erred in finding that the State was negligent in retaining Lon Fleetwood and in assessing 10% in damages based on this negligence;
3) The trial court erred in failing to render judgment against the City;
4) The jury erred in finding Lon Fleetwood had used excessive force during the incident with plaintiffs;
5) The jury erred in assessing Garrett's comparative fault at 30 percent;
6) The jury erred in assessing the damages of Robert A. Garrett, Sr.
Additionally, Robert Garrett, Jr. argues on appeal that:
1) The trial court erred in failing to find the State was negligent in hiring Lon Fleetwood; and
2) The trial court erred in entering judgment in favor of Robert Garrett, Jr. in the amount of $3,000.00 when his damages were assessed at $30,000.00.

*668 Vicarious Liability

The trial court, relying on La.C.C. art. 2320, determined that the State of Louisiana is vicariously liable for the actions of Fleetwood, stating in its reasons for judgment:
It is clear to this court that Lon Fleetwood was acting within the course and scope of his duties as an officer when he caused the plaintiffs [sic] harm. Hence, this court is of the opinion that the State is liable for the actions of its employee; and accordingly is responsible for the damages occasioned by Lon Fleetwood.
La.C.C. art. 2320 provides in part:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
This court has recently addressed application of this article to the actions of an MRBA officer in Price v. Dept. of Transp. and Dev., 608 So.2d 203 (La.App. 4th Cir.1992) writ application withdrawn, 613 So.2d 985 (La. 1993), wherein we stated:
In determining vicarious liability, the focus is on the employee's general activity at the time of the accident rather than on the specific tortious conduct, and the fact that an act is forbidden or is done in a forbidden manner does not remove that act from the scope of employment. (citations omitted.) There is no question that Officer Poche was on duty at the time of the altercation with the plaintiffs and was acting in the course and scope of his employment when he struck Glenn Price. For this reason, the MRBA and DOTD, as the employers of Poche, are vicariously liable for the damages sustained by Poche.
The State argues that our holding in Price is not controlling in the instant case because the court did not consider the provisions of LSA-R.S. 42:1441.1 and LSA-R.S. 13:5108.2, which the State argues effectively bar plaintiffs' claim for vicarious liability against the State. LSA-R.S. 42:1441.1 provides:
1441.1 Nonimposition of master-servant liability on state by Civil Code Article 2320 and other laws for torts of persons not designated as state officials, officers or employees by R.S. 13:5108.2. Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi-offenses of his servant shall not extend or apply to and shall not impose liability on the state for the offenses and quasi-offenses of any person who is not expressly specified by R.S. 13:5108.2(A) to be an official, officer, or employee of the state entitled to indemnification under R.S. 13:5108.2.
The applicable portion of La.R.S. 13:5108.2 provides:
5108.2 Indemnification of officials, officers, and employees of the state.
A. (1) As used in this Section, an ... employee of the state means such a person holding office or employment:
(a) In the executive branch of state government or in any department ... thereof...
B. It is hereby declared to be the public policy of this state that the state shall hold harmless and indemnify each ... employee of the state from any financial loss ... arising out of any ... suit, or judgment in any court by reason of the alleged negligence or other act by the ... employee, if the ... employee, at the time damages were sustained, was acting in the discharge of his duties and within the scope of his... employment and such damages did not result from the intentional wrongful act or gross negligence of the ... employee.
The State does not dispute that Lon Fleetwood is expressly specified by R.S. 13:5108.2(A)(1)(a) to be an employee of the State. However, the State argues that because Fleetwood's alleged wrongful acts were intentional, he is not entitled to indemnification under 13:5108.2(B), and therefore is not among the class of persons for whom vicarious liability arises based on R.S. 42:1441.1. Alternatively, the State argues that at the time of this altercation, Fleetwood was outside of the MRBA's territorial jurisdiction and was not acting in discharge of his duties so as to entitle him to indemnity under 13:5108.2(B) and subject the State to vicarious liability for his actions based on La.C.C. art. 2320.
*669 However, we find the State's reliance on these two statutes to be misplaced. R.S. 42:1441.1 limits the effects of codal article 2320 on the State to specifically enumerated individuals for whom vicarious liability is extended. This statute does not limit the State's liability for only negligent acts of its employees, but rather codal article 2320 imposes vicarious liability on the State for all actions of the individuals specifically listed in 13:5108.2.
We find no support for the State's argument that if an individual is not entitled to indemnity because he commits an intentional act, then the State is not vicariously liable for him. Based on the provisions of R.S. 42:1441.1, the State is vicariously liable for only those individuals listed in R.S. 13:5108.2(A), regardless of whether they will be indemnified by the State under 13:5108.2(B). Regardless of whether Fleetwood will be indemnified by the State for any financial loss he suffers as a result of the trial court's judgment, he is nevertheless among those designated by 13:5108.2(A) to be "an official, officer, or employee of the State" and as such the State is subject to vicarious liability for his actions based on article 2320 of the Civil Code.
Based on the record before us, we find that Officer Fleetwood was acting in discharge of his duties with the MRBA at the time he stopped the Garrett vehicle. At the time of the stop, he was on-duty, in uniform and en route following an order from the MRBA dispatcher to assist with accidents on the Mississippi River bridge. Although Fleetwood's actions were clearly intentional, there is no question that his general activities at the time of the altercation were done in the course and scope of his employment with the MRBA. See, Lamkin v. Brooks, 498 So.2d 1068, 1071 (La.1986).
Based on our previous holding in Price, we find no error in the trial court's determination that the State is vicariously liable for the damage to the Garretts occasioned by Fleetwood. Appellant's assignment of error has no merit.

Negligent Hiring and Retention
The State next argues the trial court erred in determining that the MRBA had negligently retained Fleetwood as an employee and in assessing 10 percent liability against the State for such negligence. Conversely, Robert Garrett, Jr. contends by his appeal that the trial court erred in failing to find Fleetwood's hiring by the MRBA to constitute negligence as well.
The trial court, in its reasons for judgment, states:
The next issue this Court addresses is whether the State was negligent in hiring and retaining Lon Fleetwood as an officer. It is the opinion of this court that the State was in fact negligent in hiring Lon Fleetwood as an officer. The State, through the MRBA, conducted a background check of Lon Fleetwood using the New Orleans Police Department computer. However, this system reflected no outstanding arrest warrants in the country and no convictions in the State of Louisiana for Lon Fleetwood. The parties stipulated that it was feasible for the MRBA to have conducted a nationwide search of past arrests and convictions of Lon Fleetwood at the time Mr. Fleetwood was hired. The court is confident that such a search would have revealed the Maryland conviction. However, the State contends that even if the search had revealed the conviction, Civil Service Regulations would not have prevented him being hired because the conviction was a misdemeanor.
Louisiana Code of Criminal Law and Procedure defines a felony as "any crime for which an offender may be sentenced to death or imprisonment at hard labor." Had Lon Fleetwood committed the crime of unauthorized use of a motor vehicle in Louisiana it could have been classified as a felony. The fact that Maryland classifies this crime exclusively as a misdemeanor is of no moment. Louisiana law prosecutes this crime as a felony and a misdemeanor. It is unfortunate that the plaintiff introduced no details of this crime, therefore this court is incapable of determining if that crime was a misdemeanor or a felony under Louisiana law. However, this court *670 is of the opinion that the State had a duty to use the most thorough method of search available to it at the time. Perhaps even further to inquire about the nature of the offense. The plaintiff, in this area, have [sic] failed to carry their burden of proof.
Finally this court examines whether the State was negligent in retaining Lon Fleetwood as an officer. This court holds the opinion that the State was also negligent in retaining Lon Fleetwood as an officer. The entries of Lon Fleetwood's file reveal that among other things, Fleetwood's driving record was less than commendable. His failure to report an accident was a reflection of his character. Law enforcement officers should have impeccable character and be extremely honest. They should not only enforce the law, but are bound to uphold the law. Further, they should be beyond reproach because of the trust citizens place in them, the authority endowed upon them, and the weapons that they are licensed to carry and use. The State has a duty to ensure that those people appointed to positions of authority are responsible individuals. Hence, the State is liable for the negligent retention of Lon Fleetwood.
In support of their negligent retention claim, plaintiff introduced a letter dated November 24, 1986 from Delbert Chatellier of the Mandeville police department to the superintendent of the MRBA. The letter included information that Fleetwood, while employed by the MRBA, had been stopped on several occasions for traffic violations in Mandeville and had been arrested by the Mandeville police department for disturbing the peace after being involved in a fight. The letter further stated that Fleetwood had been involved in several arguments at his child's school and at a local restaurant. However, the record indicates that these activities took place while Fleetwood was off-duty with the MRBA.
Plaintiffs also introduced evidence that Fleetwood had been involved in two automobile accidents while on duty and had also failed to report an accident while on duty with the MRBA.
In response to this evidence, the State introduced the testimony of the MRBA police superintendent, Michael Helmstetter, who stated that Louisiana Civil Service regulations prohibit the MRBA from taking any action against Fleetwood for off-duty activities which do not result in a criminal felony conviction. Superintendent Helmstetter testified that although the MRBA had been notified by the Mandeville police of the arrest and the traffic violations, the MRBA could not have taken any action against Fleetwood based on these off-duty activities.
With regard to the on-duty incidents, the State introduced evidence to show that Fleetwood had been properly disciplined for each incident through suspensions. The State further introduced letters which were contained in Fleetwood's file which were complimentary of his actions and attitudes while on duty.
Based on our review of the record, we find that plaintiffs failed to introduce sufficient evidence to prove that the MRBA could have or should have removed Fleetwood from the force or taken additional disciplinary action against Fleetwood. The failure of the MRBA to discipline Fleetwood for the off-duty incidents does not constitute negligence on the part of the MRBA and the record clearly shows that Fleetwood was promptly disciplined for the incidents which occurred while Fleetwood was on duty. We conclude that that trial court's determination that the retention of Fleetwood by the MRBA was negligent is manifestly erroneous. Accordingly, we reverse the trial court's finding of liability against the State in favor of Robert Garrett, Sr., Dora Garrett and Robert Garrett, Jr. in the amount of 10 percent of their damages. We vacate the award of damages in favor of Dora Garrett in the amount of $5,000.00 and Robert Garrett, Jr. in the amount of $3,000.00. Further, we reduce Robert Garrett, Sr.'s award to 70 percent of the total amount awarded by the jury, or $245,000.00.
With regard to Robert, Jr.'s claim on appeal that the trial court erred in failing to find the MRBA was negligent in its hiring of Fleetwood, the record fails to support such a determination. Plaintiffs introduced evidence at trial that Fleetwood had been previously *671 convicted of unauthorized use of a movable in Maryland, and they contend that failure of the MRBA to discover this conviction before hiring Fleetwood was negligent. However, plaintiffs failed to introduce any evidence at trial concerning the facts of this conviction, and there is insufficient evidence to sustain a determination that Fleetwood should not have been hired because of the conviction. Although plaintiffs introduced evidence to indicate that Fleetwood had been untruthful on his employment application regarding this conviction, the record shows that once the MRBA learned of the conviction and of Fleetwood's misrepresentation, Fleetwood was terminated. Under these circumstances, we find no error of the trial court in failing to find that the MRBA was negligent in the hiring of Fleetwood.
This assignment of error asserted by Robert Garrett, Jr. has no merit. Further, based on our holding herein vacating the finding of liability against the State of Louisiana and vacating the award of damages in favor of Robert Garrett, Jr., we do not address Robert, Jr.'s remaining assignment of error that the damage award is erroneous.

Liability of the City of New Orleans
The State and Fleetwood both argue on appeal that the trial court erred in failing to find liability on the City of New Orleans based on the actions of the NOPD officers who were present at the time of this altercation. Although the Garretts testified that several officers participated in the beating of Garrett, there is insufficient evidence in the record to show that NOPD officers struck any of the plaintiffs at any time or used excessive force. None of the witnesses to this incident who testified at trial stated that an NOPD officer struck any of the plaintiffs. Rather, Garrett testified at trial that he only saw MRBA officers during the beating and could not identify any NOPD officers.
Further, both Garrett and his wife specifically testified that Fleetwood "rammed" Garrett while he was standing behind his truck before the additional officers arrived. Further, the evidence indicates that the fight involving Robert, Jr. only involved Fleetwood and another MRBA officer and did not involve NOPD officers. In addition, the record clearly shows that the NOPD officers did not participate in the arrest of the Garretts or any of the activities which took place during and after the arrests. Rather, the record shows that once the NOPD officers arrived on the scene, the situation became more controlled. Under these circumstances, we find no error of the trial court in failing to make a determination of liability on the part of the City of New Orleans.

Excessive Force
By his appeal, Fleetwood contends that the jury erred in finding that he acted unreasonably or used excessive force against Robert Garrett, Sr. Fleetwood points to the trial testimony of several of the other officers who arrived on the scene who stated that they did not witness any sort of physical contact between Fleetwood and Garrett.
However, both Garrett and his wife testified at trial that prior to the stop, their vehicle was struck in the rear by Fleetwood's vehicle several times. Further, plaintiffs testified that when Fleetwood exited his car he began shouting obscenities at them and was waving his gun in the air. Both Mr. and Mrs. Garrett testified that Fleetwood refused to take Garrett's driver's license from Dora Garrett. Both Mr. and Mrs. Garrett testified that Fleetwood "rammed" Garrett with his body. Further, although they did not specifically name Fleetwood, the Garretts testified that several officers repeatedly beat Garrett. Garrett also testified that Fleetwood intentionally slammed the car door on his leg while he was at the MRBA station, and that he was forced to remain in the rear seat of Fleetwood's car for four hours. He further stated that Fleetwood turned the heater on in the vehicle while Garrett and his son were handcuffed in the rear seat and left it running for some time. Officer Fleetwood did not testify at trial to rebut any of these allegations.
In addition, an independent witness, Roberta Brown, testified that she observed the incident involving Fleetwood and the Garretts. She stated she observed Fleetwood waving his gun in the air and she saw Fleetwood strike Garrett. Ms. Brown testified *672 that Fleetwood was not acting normally and she was afraid for Garrett's life.
Although the State argues the medical evidence does not support Garrett's claim of injury, the record shows that Garrett was examined four days after this incident by Dr. Stewart Altman who found Garrett to have contusions of the neck and back and spasms of the cervical region with a limited range of motion.
The jury had the opportunity to see all the witnesses and view their demeanor. For whatever reason, Fleetwood was not present during the trial and did not testify in his defense. The jury apparently chose to believe the testimony of the plaintiffs which was corroborated by Roberta Brown. We find this determination to be supported by the evidence in the record, and we find no manifest error in the jury's finding of liability on the part of Fleetwood.

Comparative Fault
Both Fleetwood and the State argue that the jury erred in assigning only 30 percent comparative fault to Robert Garrett, Sr. They argue that Garrett acted unreasonably in failing to move his vehicle from Fleetwood's path, in stating that he was refusing to go to jail, in resisting efforts to be handcuffed, in attacking Officer Mollier and in allegedly kicking the door of the police car.
However, as stated previously, the evidence in the record shows that Fleetwood, a law enforcement officer, acted unreasonably and outside the scope of his authority in this incident. Plaintiffs testified that their vehicle was repeatedly struck in the rear by Fleetwood's car and Fleetwood exited his vehicle shouting obscenities and waving his gun. There is also ample evidence to indicate Fleetwood rammed his body into Garrett's and participated in striking Garrett as he stood behind his truck. The evidence further indicates that Fleetwood acted unreasonably during the arrest of the Garretts. Again, Fleetwood did not testify at trial and did not refute the allegations made by plaintiffs.
Based on the record before us, we find the jury's assignment of comparative fault to be reasonable. While the evidence does show that Garrett resisted the arrest and scuffled with one of the officers, the jury's assessment of 30 percent comparative fault on his part reflects these actions. We will not disturb this determination of the jury which we find to be within its discretion. This assignment of error has no merit.

Damages
Appellants next argue that the jury's award of general and special damages to Robert Garrett, Sr. is manifestly erroneous.
The jury awarded Garrett the sum of $210,000.00 in special damages which consisted of medical expenses, loss of earnings and loss of earning capacity. Appellants argue that this award is not supported by the record.
Robert Garrett, Sr. testified at trial that as a result of this incident he was unable to work and wanted to isolate himself. He stated he could no longer see police officers without becoming upset. He stated the incident caused him to lose his family because it caused him to have problems with his wife and children. He stated his son called him a coward and no longer had respect for him. At the time of trial, Garrett was divorced from his wife, and attributed this to the incident. Garrett further stated that this incident caused him to lose business in his furniture refinishing business because he was not working and eventually the business was placed in bankruptcy. Garrett stated that although he was an elder in his church prior to this incident, he had to leave the church because of his shame and embarrassment.
With regard to plaintiff's medical expenses, Dr. Stewart Altman testified that he saw plaintiff four days after this incident and stated that plaintiff had suffered contusions of his neck and back and a cervical strain which he believed lasted for threefive months. Dr. Altman also stated that plaintiff was suffering from headaches and a limited range of motion in his neck.
Dr. Beverly Howze, a psychologist, testified at trial that she began seeing Garrett in December of 1987. She stated he was suffering from severe stress and depression in reaction to this incident. Dr. Howze continued to see Garrett until approximately January *673 of 1989, and she spoke with both Mr. and Mrs. Garrett on the phone on numerous occasions after that. She diagnosed Garrett as having post traumatic stress disorder and stated she did not believe he would ever recover from the effects of this incident. She stated that she believed that the incident which took place with the police in October of 1987 caused the breakup of the Garrett's marriage, the deterioration of Garrett's business, and the loss of Garrett's previous involvement in his church and his religion. Dr. Howze stated that her bill for her services to the Garretts was $940.00.
Dr. Thomas Hannie, also a psychologist, testified at trial for the defendant. He stated that he did not believe plaintiff was suffering from post traumatic stress disorder but believed that plaintiff's problems pre-dated this incident and were a result of his upbringing, training and personality. He stated he saw no reason why plaintiff could not work. On cross-examination, Dr. Hannie stated that he saw plaintiff one time in August of 1992, and was not familiar with the incident which occurred in October of 1987.
With regard to loss of earnings and earning capacity, plaintiff introduced the testimony of Melville Wolfson, who was accepted by the court as an expert in forensic economics. Dr. Wolfson examined plaintiff's income tax returns, both personal and corporate, and his bank records and determined that between the incident in October 1987 and the time of trial, September, 1992, Garrett had sustained a lossof income of approximately $286,904.00. Dr. Wolfson also made a projection of future loss of earnings based on Garrett's limited capacity to work which amounted to a figure of over $900,000.00.
Another economist, Dr. Kenneth Boudreaux, testified for defendants at the trial and disagreed with Dr. Wolfson's figures. Based on his calculations derived from plaintiff's records and tax returns, plaintiff had not lost any type of income as a result of the incident in October of 1987.
The jury awarded plaintiff $210,000.00 in medical expenses, loss of earnings and loss of earning capacity. The jury apparently believed plaintiff had suffered some loss of earnings as a result of this incident, although not to the extent calculated by Dr. Wolfson. The jury apparently did not believe the testimony of defendant's expert who stated there had been no loss of earnings. We have reviewed all the testimony and evidence in the record in this case, and we fail to find that the jury abused its much discretion in awarding plaintiff $210,000.00 in special damages.
The jury also awarded plaintiff $140,000.00 in general damages. Appellants argue that this award is an abuse of discretion.
The general damages award consisted of damages for physical pain and suffering, mental anguish and loss of consortium. Although the record reveals that plaintiff suffered a limited amount of physical pain and suffering, the record further shows that plaintiff suffered an enormous amount of mental anguish as a result of this incident. Following this incident, plaintiff was very upset and angry and saw a psychologist for over one year. Plaintiff testified that he was unable to work, unable to be a responsible parent or father, and unable to maintain relationships. Plaintiff stated he can no longer see police officers without becoming upset. Plaintiff stated that he and his wife were divorced as a result of this incident, and they had previously had a very close relationship. Plaintiff also stated that his relationship with his son had suffered greatly because his son had seen the entire incident and had told plaintiff he had acted like a "coward" in his dealings with the officers. In addition, plaintiff, a previously active member of the Jehovah Witness faith, was no longer able to serve as an elder of the church as a result of this incident and stopped participating in the church altogether. Plaintiff also testified that he suffered a great deal of self-doubt as a result of this incident and began drinking heavily in an effort to cope with the stress he experiences.
We have thoroughly reviewed the record in this case, and find that this incident had devastating effects on this plaintiff's personal and professional life and caused him a substantial amount of hardship. We find no abuse of the jury's vast discretion in awarding plaintiff $140,000.00 in general damages *674 for the damages he sustained as a result of this incident.

Conclusion
Accordingly, for the reasons stated, the judgment of the trial court insofar as it determines liability against the State of Louisiana for the negligence of the MRBA is hereby reversed. Further, the award of damages against the State of Louisiana in the amount $5,000.00 to Dora Garrett and $3,000.00 to Robert Garrett, Jr. is vacated. We also vacate the trial court's award of an additional ten percent of Robert Garrett, Sr.'s damages against the State of Louisiana.
The judgment of the trial court is hereby recast to provide that there be judgment in favor of Robert Garrett, Sr. and against Lon Fleetwood and the State of Louisiana in solido for the sum of $245,000.00. In all other respects the judgment of the trial court is affirmed.
AFFIRMED IN PART; REVERSED AND VACATED IN PART AND RENDERED.
PER CURIAM.
In its verdict, the jury made a determination that Lon Fleetwood had no liability for the claims of Robert A. Garrett, Jr. Insofar as the trial court found the State of Louisiana vicariously liable for Fleetwood's actions, this finding is only applicable to the award in favor of Robert A. Garrett, Sr., to whom the jury found Fleetwood liable. The trial court did not make an independent finding of liability on the part of Lon Fleetwood. The trial court's award of damages to Robert A. Garrett, Jr. was based on the theory of the State's negligent retention of Fleetwood, which we found in our original opinion to be unsupported in the record. For the reasons stated, Robert A. Garrett, Jr.'s application for rehearing is denied, and our original opinion remains unchanged.