713 So.2d 647 (1998)
Mark Alan HEBERT, Plaintiff,
v.
Vincent TALBOT, et al., Defendants.
No. 30474-CA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1998.
A. Richard Snell, Bossier City, for Plaintiff-Appellant.
Casten & Pearce by Theodore J. Casten, Shreveport, for Defendant-Appellee State Farm Fire and Casualty Company.
Before HIGHTOWER, BROWN and PEATROSS, JJ.
HIGHTOWER, Judge.
Plaintiff, Mark Alan Hebert, appeals the denial of coverage under the Comprehensive Business Liability section of the "apartment policy" issued by State Farm Fire and Casualty Company to the Talbot estate d/b/a Embassy House Apartments, defendant Vincent Talbot's employer. We affirm.

*648 PROCEDURAL HISTORY AND FACTS
For injuries allegedly caused when Vincent Talbot placed Hebert, then a juvenile, in a cage for several days, plaintiff sued Talbot in March 1990, while naming State Farm among several defendants.[1] See our prior opinion in Hebert v. Talbot, 26,009 (La. App.2d Cir. 09/21/94), 643 So.2d 323, for a detailed synopsis of the facts.
When the district court granted State Farm's motion for summary judgment maintaining that the policy coverage did not extend to intentional acts or personal injuries arising from the willful violation of a penal statute, this court reversed upon concluding that evidence of Talbot's conviction for cruelty to a juvenile, by itself, did not bar the action against the insurer. Id. Later, following a bifurcated trial, the district court again found Talbot's actions excluded from coverage. This appeal then ensued.

DISCUSSION
The issue presented is whether the State Farm policy affords coverage for Talbot's actions. Plaintiff's claim is asserted under that contract's Section II, denominated the Comprehensive Business Liability (Coverage L) section, wherein State Farm agreed to pay on behalf of the insured:
All sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage or personal injury caused by an occurrence to which this insurance applies.
Thus, in order for coverage to exist, the alleged damages must have been caused by an "occurrence." In Section II, Definitions, that term is defined as follows:
12. Occurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damages neither expected nor intended from the standpoint of the insured and with respect to personal injury, the commission of an offense or series of similar or related offenses. This definition shall include any intentional act by or at the direction of the insured which results in bodily injury, if such injury arises solely from the use of reasonable force for the purpose of protecting persons or property.
The policy therefore does not provide coverage for any injury expected or intended from the standpoint of the insured, unless an intentional act producing bodily injury "arises solely from the use of reasonable force for the purpose of protecting persons or property." In the Comprehensive Business Liability section, the policy additionally states:
Under Coverage L, this policy does not apply:
* * *
16. to personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured.
In denying coverage, the trial court found that Talbot's actions stemmed from "the willful violation of a penal statute" excluded from coverage pursuant to paragraph II(16), and that plaintiff's claimed injuries "did not arise from the use of reasonable force," or otherwise result from an occurrence under paragraph II(12).
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless clearly wrong, and where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). The record in the present case reflects no manifest error in the trial court's determination that Talbot's actions constituted neither an accident nor the reasonable use of force, but arose instead from the willful violation of a penal statute, as excluded under paragraph II(16).
Contending there is no evidence of Talbot's conviction of any penal statute, and that he did not intentionally violate any criminal statute or ordinance, appellant argues that the personal injury exclusion should not apply. In Talbot's deposition of October 14, 1992, however, he admitted being convicted of cruelty *649 to a juvenile in Caddo Parish. Moreover, in his motion to preserve evidence filed on June 11, 1992, appellant stated that the incidents from which this cause of action arose resulted in criminal charges, a trial, and a conviction against him, as well as an affirmance after appeal in 1991. Also, in support of its motion for summary judgment, State Farm attached court minutes from the criminal case showing Talbot's conviction on a charge of cruelty to juveniles. In opposition to that motion, appellant's attorney did not contend that Talbot had not been convicted of this crime, but argued instead:
Looking at State Farm's first contention that the mere conviction shows and is evidence of an intentional act, a review of the Criminal Code and, in particular, the offense under which Mr. Talbot was convicted, namely, [La. R.S.] 14:93 will dispel that argument in and of itself. [Emphasis added.]
Nor do we interpret the "willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured" to require anything more than "general criminal intent," as defined in La. R.S. 14:10(2):
General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
That definition essentially serves to separate crimes for which intent is required, from crimes consisting merely of criminal negligence producing criminal consequences.
Granted, the crime of cruelty to juveniles can flow either from the intentional mistreatment or from the criminally negligent mistreatment or neglect of a child. Even so, after weighing the deposition testimony of plaintiff and Talbot, the trial court plainly found "that the actions of Talbot were not the result of mistake or confusion but rather the intentional confinement ... sufficient to constitute a willful violation of Title 14 Section 93." Accepting that reasonable conclusion, see Stobart v. State, DOTD, 617 So.2d 880 (La.1993), we reject appellant's argument in reference to the willfulness of Talbot's actions.
We similarly turn aside appellant's argument that the paragraph II(16) exclusion does not apply inasmuch as Talbot's employer and/or principals, liable under the concept of respondent superior, did not commit any "intentional" acts harming Hebert. The policy, of course, covers the acts of employees of Embassy House Apartments. The exclusion, however, given its language encompassing any insured, clearly pertains to both the named insured and any omnibus insured such as Talbot. See Lamkin v. Brooks, 498 So.2d 1068 (La.1986) (holding that the insurer, under an exclusion utilizing this same language, afforded the named-insured town no vicarious liability coverage when its police officer committed an unprovoked attack on an individual). Appellant strongly relies upon Rivers v. Brown, 168 So.2d 400 (La. App. 3d Cir.1964), and Baltzar v. Williams, 254 So.2d 470 (La.App. 3d Cir.1971). Yet, with respect to intentional acts, the policies in both of these cases referred to "the insured," not "any insured" as does the exclusion before us.
Here, the clear import of paragraph II(16), contained in the policy for which the employer contracted, excludes personal injuries caused by the willful violation of a penal statute by any insured. With Talbot coming within the terms of "any insured" and having caused personal injury by willfully violating the cruelty to juveniles statute, we find no error in the trial court's application of the exclusion. Cf. Lamkin, supra; Applewhite v. City of Baton Rouge, 380 So.2d 119 (La. App. 1st Cir.1979).
Reaching these determinations, we need not address the trial court's explorations into whether plaintiff's alleged injuries resulted from an "occurrence" as defined in paragraph II(12).

CONCLUSION
For the foregoing reasons, we affirm the lower court judgment at appellant's costs.
AFFIRMED.
NOTES
[1] On July 7, 1993, Hebert executed a Receipt and Release settlement with defendant, Vincent Talbot, and the other named defendants, Betty O. Talbot, Benjamin Talbot, Jr., and Embassy House Apartments, but specifically reserved his rights against State Farm.