Dear Mayor Choate:
You have related to this office that certain council members of the Village of Saline and the Chief of Police of the Village are in disagreement regarding the issue of who has control over the police car utilized by the Chief.
The case of Cogswell vs. Town of Logansport, 321 So.2d 774 (La.App. 2d Cir. 1975) stands for the proposition that the general responsibility for law enforcement granted to a chief of police means the power to supervise the operation of the police department and assign its personnel and equipment. Thus, the chief of police has supervisory power over police property
In accord with the cited jurisprudence, it remains our opinion that the chief of police has the inherent authority to control city police vehicles. The Council may not dictate where he parks the car, as this would be an infringement on the police chief's inherent powers. See Attorney General Opinion 99-406, attached. However, the personal use of a police vehicle must be approved by the council members. In accord are Attorney General Opinions 99-27 and 96-475, copies attached.
Your second question concerns the conduct of a council member who allegedly follows the police chief and his family, keeping "watch" on the family residence. Note this conduct might subject this council member to the charge of stalking under R.S. 14:40.2, pertinently providing:
 § 40.2 Stalking
 A. Stalking is the willful, malicious, and repeated following or harassing of another person with the intent to place that person in fear of death or bodily injury.
 B. (1)(a) Whoever commits the crime of stalking may be imprisoned for not more than one year or fined not more than two thousand dollars, or both.
 (b) Whoever commits the crime of stalking against a victim under the age of eighteen when the provisions of Paragraph (6) of this Subsection are not applicable shall be imprisoned for not more than one year, with or without hard labor, fined not more than two thousand dollars, or both.
Note that there are situations where the Village could be held responsible for the tortious conduct of its officers under the theory of respondent-supervisor. See Lamkin vs. Brooks, 498 So.2d 1068 (La. 1987). However, the question of liability of the Village for the conduct of this official is fact-sensitive, and cannot be answered directly.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
OPINION NUMBER 99-406
January 18, 2000
77 OFFICERS — LOCAL MUNICIPAL LA R.S. 33:423
Determining where to spend funds allocated to the police department of a Lawrason Act Municipality for the maintenance and repair of municipal police vehicles is an "inherent power" of the chief of police.
Town of Sibley Larry Merritt, Mayor P.O. Box 128 Sibley, LA 71073
Dear Mr. Merritt:
This office has received your opinion request of November 8, 1999, in which you present the following issue for our review:
 Is the Town Council of a Lawrason Act Town able to specify where the town-owned police vehicle is taken for maintenance?
The powers of a police chief are reserved by LA R.S. 33:423, which states in part:
 The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement of all ordinances within the municipality and all applicable state laws.
LA R.S. 33:423
In Cogswell v. Town on Logansport, 321 So.2d 774, 778 (La.App. 2d Cir. 1975), the court held that the powers and duties of the police chief of a Lawrason Act municipality are not expressly defined by statute or by jurisprudence. These powers, often referred to as `inherent powers,' are those which are necessary for the police chief to carry out his duties. LA Att'y Gen. Op. 87-682.
"Because of the nature of his office, . . . he is the chief law enforcement officer of the City and, as such, has supervision of the police department." Lentini v. City of Kenner, 211 So.2d 311, 312 (La. 1968). "The chief of police is the only official authorized to make decisions concerning disbursement of municipal funds allocated to the police department. LA Att'y Gen. Op. 98-469. See also Doyle v. City ofHarahan, 610 So.2d 272 (La.App. 5th Cir. 1992), LA Att'y Gen. Op. 98-438, 95-275, 95-135, 94-538, 94-313, 93-666, 87-682, 86-589.
"[I]t is an established principle that the mayor and aldermen may not revoke the `inherent powers' of an elected chief of police of a Lawrason Act municipality." Cogswell v. Town on Logansport,321 So.2d at 778. Absent the failure of the chief to comply with formal municipal purchasing procedures in making the "purchase," the refusal to pay an expenditure validly incurred by the chief constitutes an infringement upon the chief's inherent powers. LA Att'y Gen. Op. 98-469.
In LA Att'y Gen. Op. 84-190, this office held that even though police vehicles are municipal property, the chief of police has the inherent authority to control municipal police vehicles, including their repair and maintenance. However, because of the mayor's and the board of aldermen's statutory power to control and manage municipal property, they must legally designate and issue vouchers for the repair of the police vehicles. LA Att'y Gen. Op. 84-190.
In a previous opinion, this office held that, in a Lawrason Act community, neither the mayor nor the board of aldermen could designate where the police chief may spend police funds. LA Att'y Gen. Op. 83-257.
Therefore, it is the opinion of this office that having the mayor or board of aldermen designate where the police chief may obtain necessary maintenance on municipal police vehicles is an infringement on the police chief's inherent powers.
Should you have any further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: CHARLES H. BRAUD, JR.
ASSISTANT ATTORNEY GENERAL
RPI:CMF, III/mjb
OPINION NUMBER 99-27
August 20, 1999
71-1 MUNICIPALITIES — Special Charters La. R.S. 33:1811
Act 109 of 1878
Discussion of the power and authority of the Chief of Police, Mayor and Board of Selectmen of the City of Plaquemine relative to control of budgeted funds, private use of police vehicles, legal counsel, and elimination of positions.
Chief C. J. Cazes Police Department City of Plaquemine Post Office Box 329 Plaquemine, LA 70765-0329
Dear Chief Cazes:
You have requested the opinion of this office on four questions. For the sake of clarity, each of your questions will be addressed separately below. The City of Plaquemine is governed by a special legislative charter, Act 109 of 1878, as amended. We contacted the Town Clerk and were provided with a copy of the charter, as amended, that is on file with that office. Consequently, our responses to your questions will be based upon the charter, as amended, on file with the Town Clerk, and upon applicable state law.
Section 1(a) of the Charter of the City of Plaquemine provides that "[t]he governing authority of the City of Plaquemine shall consist of a mayor, six (6) selectmen and a chief of police." (Italics added) The Charter formerly provided for a marshal, instead of a chief of police. It is noteworthy that while the position of marshal was originally appointed by the mayor and the selectmen, the chief of police is elected at large and his position is elevated to constitute a part of the governing authority of the city. It is apparent that the position of marshal was intended to be expanded when the newer position of chief of police was created, because it obviously encompassed the former position of marshal. For example, Section 2(a) of the Charter states "[t]he mayor and the chief of police (marshal) shall be elected at large by qualified voters throughout the City of Plaquemine." The parenthetical reference to the position of marshal clearly indicates that the former position of marshal is incorporated in the position of chief of police. The only description of the duties of the chief of police in the Charter is found at Section 9, and that description is only of the duties of the marshal:
 The Marshal (or Assistant Marshal) shall attend upon the Mayor's Court, and be subject to his orders and the regulations aforesaid, and is hereby vested with all the powers of a peace officer and fully authorized and empowered to serve and execute all warrants, writs, summons, orders, search warrants, mittimus or commitments issued by the Mayor or any Justice of the Peace within said Town [City]; to make arrests for the infractions of the Laws of the State and the laws, ordinances and regulations of said Town [City]; to follow and arrest all offenders flying from said Town [City], all in the same manner and to the same extent as Sheriffs in the discharge of their duties, and shall be entitled to the same compensation as provided by law for Sheriffs in criminal cases.
The foregoing section of the Charter has remained unchanged, with the sole exception of the insertions of the bracketed word "City," since the original act of incorporation of the town of Plaquemine (Act 109 of 1878).
In Lentini v. City of Kenner, 252 La. 413, 211 So.2d 311 (1968), the Supreme Court recognized that a chief of police of a Lawrason Act municipality is the chief law enforcement officer of the municipality and, as such, has the inherent power of supervision over the police department. See also, Cogswell v. Town of Logansport, 321 So.2d 774
(La.App. 2d Cir. 1975). This office has expressed its opinion, with regard to municipalities governed by special legislative charters, including the City of Plaquemine, that chiefs of police have certain inherent powers, including supervision of the police department. Attorney General Opinion Numbers 85-122, 86-145 and 87-341. We think the title "chief of police" is synonymous with "supervisor of police" and, barring some specific restriction in the city charter, confers upon the chief of police the power to supervise the day to day operations of the police department. Further support for this conclusion is found in the specific exclusion of supervision and administration of the police department by the mayor set forth in Section 2-64 of the municipal code. That section provides that the mayor shall supervise and direct the administration and operation of all municipal departments, offices and agencies, except thepolice department and the city court. However, it should be noted that the mayor and aldermen have the statutory authority to amend the municipal budget and reduce the funds allocated to the police department, if necessary. See, La. A.G. Opinion Number 94-313.
Having generally discussed the powers and duties of the chief of police under the city charter, we now address your specific questions.
Question 1: "Once the budget for the police department is approvedin a dollar amount, is the Mayor allowed to hold back funds that havebeen approved by the City Council, and direct how those funds are to bespent?"
As mentioned above, by ordinance, the supervision, administration and operation of the police department is specifically excluded from the mayor's responsibilities. On the other hand, we are of the opinion that you, as chief of police, have the inherent power to supervise and direct the administration and operation of the police department. Consequently, this office is of the opinion that the mayor cannot, without amending the municipal budget, withhold funds appropriated to the police department by the board of selectmen, nor can he direct that those funds be expended other than as specified in the budget.
Question 2: "Police Department administrative staff and detectivesare considered on call 24 hours each day and have been issued unmarkedunits. May these units be used for any reason based on the fact that anystaff member may be called to work at any time in an emergency?"
This office has issued a number of opinions recognizing the inherent authority of the chief of police to control city police vehicles and to assign a vehicle to himself for around the clock use in conjunction with his 24-hour duty hours. We are of the opinion that this authority of the chief of police extends likewise to assigning vehicles to other police personnel for use in conjunction with their 24-hour on-call status. It is pertinent to note that modern communications devices such as beepers and cell phones provide alternatives to police radios for notifying officers of emergencies.
However, the inherent authority of the chief of police extends only to functions of the police department, i.e., the law enforcement function. Otherwise, with the exception of the mayor's delegated authority as set forth in Section 2-64 of the municipal code, the control of all municipal property rests with the board of selectmen. As we have noted in previous opinions, personal use of city police vehicles must be approved by the board of selectmen. See Attorney General Opinions Number 78-1461, 80-1078, 82-1106 and 96-475, copies of which are enclosed for your convenience. However, in establishing permissible personal use of police vehicles, consideration must be given to Article VII, Section 14 of the Louisiana Constitution, which prohibits the donation or loan of the "property or things of value of the state or of any political subdivision" to any person, association or corporation. It must also be noted that personal use of employer-owned vehicles has income tax consequences which are beyond the purview of this opinion.
Question 3: "The police department and the chief are represented bythe city attorney. Payment for his services is taken directly out of thepolice budget by the city. Am I allowed by law to hire another attorney ofmy choice to represent the Police Department?"
R.S. 33:1811 limits a municipality to having "no more than one municipal attorney and no more than three assistant municipal attorneys." I find no authority for the Police Department to have its own separate counsel, unless the Board of Selectmen would designate an assistant city attorney as the attorney for the police department only. In any event, the municipal budget adopted for the police department would have to provide funds specifically for legal counsel for the department.
Question 4: "When members of the Police Department retire orresign, does the Mayor have the authority to terminate the positions andprevent me from refilling those positions?"
As mentioned above, Section 2-64 of the municipal code specifically excludes supervision and direction of the administration and operation of the police department from the mayor's responsibilities. Therefore, the mayor does not individually have the authority to terminate positions within the department or to preclude you from filling vacancies. But, please note that we have previously rendered two opinions in which we concluded that the Board of Selectmen of the City of Plaquemine has the authority to appoint city officers and hire city employees, including police personnel. Copies of those opinions, Attorney General Opinions Number 93-53 and 96-238, are enclosed.
You informed the author of this opinion that one of your concerns is that certain federal funds or grants have been provided to the city or to your department to increase the size of your police force. The city attorney should be consulted for assistance in determining whether the elimination of positions in the police department would violate terms of grant agreements or require that the city reimburse the federal government for funds already received.
We trust this opinion adequately responds to your inquiries. Should you have further questions, please do not hesitate to contact us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: GLENN R. DUCOTE
ASSISTANT ATTORNEY GENERAL
RPI/GRD/dra Enclosures
OPINION NUMBER 96-475
DECEMBER 2, 1996
77 Officers 71 Municipalities R.S. 33:404
A chief of police cannot use a police vehicle assigned for him for personal use without authorization of the mayor and board of aldermen.
James Collins, Chief of Police Town of Cotton Valley P.O. Box 425 Cotton Valley, LA 71018
Dear Chief Collins:
This office is in receipt of your request for an opinion of the Attorney General in regard to your use of a police vehicle as the elected Chief of Police. You indicate problems are arising with the City Council concerning police vehicles used on patrol for the Town. As Chief of Police with control of the police vehicles, you ask if this would permit the following:
 1) Passengers in your police car, such as your wife on occasions, and other citizens in general; and
 2) Could the Town be held responsible in case of an accident when the car is fully insured and you are the sole driver.
There is a long line of opinions by this office that recognizes that the chief of police has inherent authority to control city police vehicles and may assign a vehicle to himself for around the clock use concurrent with his twenty-four hour duty, but it has further found the vehicle may not be used as a personal car unless the personal use has been authorized by the mayor and board of aldermen. Because of their power to control and manage municipal property, they may request that the village car be used only when conducting business relative to the police department. Atty. Gen. Op. Nos, 96-292, 95-275, 82-1165, 80-1280.
However, this office has concluded while use of public property for purely private purpose is not permitted, if use of the vehicle is for a public purpose there is no prohibition against a family member traveling with the official in the public vehicle. The determination that the travel is for a public purpose is subject to review and any doubts must resolved to protect the taxpayers against unauthorized use. Atty. Gen. Op. No. 89-369.
In regard to your second question about the possibility of the Town being responsible in case of an accident, we cannot answer this definitively since liability depends on the circumstances. However, in regard to your statement that the vehicle is "fully insured", we feel it should be noted that there could be situations where severe damages could exceed policy limits.
Also, we feel you should recognize that there could be situations where the Town could be held responsible for torts of its officers. In Lamkinv. Brooks, 498 So.2d 1068 (La. 1987) the Louisiana Supreme Court observed that the question presented is whether the officer was acting within the course and scope of his employment at the time of his wrongful act in order to determine if the town can be held vicariously liable under the theory of respondeat superior. However, as observed by this office in Atty. Gen. Op. No. 94-217, the question of municipal liability is fact-sensitive and, as such, cannot be answered specifically.
We hope this is a sufficient response to your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR